CHANDLER, Justice,
Concurring in part and Dissenting in part:
¶ 63. I concur with the majority, with the exception that I would reverse the trial court’s exclusion of the testimony of Dr. Paul G. Fuselier as to wrongful death and the grant of summary judgment on Hill’s wrongful-death claim. Dr. Fuselier testified that, if Hill’s pregnancy had been diagnosed when she presented at the hospital with bleeding and cramping on May 27, 2002, the standard of care would have required Dr. Mills to admit Hill to the hospital and order bed rest, pelvic rest, hydration, and tocolytic drugs to prevent labor contractions. Dr. Fuselier testified to a reasonable degree of medical probability that, had these measures been implemented, Hill’s pregnancy could have been extended to the point of viability. Dr. Fuselier rendered these opinions based upon his twenty-five years of experience as an obstetrician and gynecologist, and the defense never challenged his qualifications as an expert in the field.
¶ 64. This Court has adopted the modified Daubert standard for the admission of expert testimony. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 39 (Miss.2003) (citing Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). This standard requires the trial court to perform a two-pronged analysis to determine whether expert testimony is admissible under Mississippi Rule of Evidence 702. Id. at 38. First, the proffered expert testimony must be relevant, that is, it must “assist the trier of fact.” Id. (quoting Mathis v. Exxon Corp., 302 F.3d 448, 460 (5th Cir.2002)). Second, the proffered testimony must be reliable. Id.
¶ 65. The trial court’s application of this two-pronged analysis is “fact-specific and appropriately uses relevant factors to determine reliability.” Id. (citing Black v. Food Lion, Inc., 171 F.3d 308 (5th Cir. 1999)). The five factors that the trial court must consider, if relevant to determine reliability in the particular case, include: (1) “whether the theory or technique can be and has been tested;” (2) “whether it has been subjected to peer review and publication;” (3) “whether, in respect to a particular technique, there is a high known or potential rate of error;” (4) “whether there are standards controlling the technique’s operation;” and (5) “whether the theory or technique enjoys general acceptance within a relevant scientific community.” Id. at 37 (quoting Daubert, 509 U.S. at 592-94, 113 S.Ct. 2786). These *337 factors are nonexhaustive, and the trial court may deem these or other factors relevant in a particular case “depend[ing] on the nature of the issue, the expert’s particular expertise, and the subject of the testimony.” Id. (citing Kumho Tire, 526 U.S. at 151, 119 S.Ct. 1167); see Poole v. Avara, 908 So.2d 716, 723 (Miss.2005).
¶ 66. In evaluating reliability, the ruling court’s focus must remain “solely on principles and methodology, not on the conclusions that they generate.” Daubert, 509 U.S. at 595, 113 S.Ct. 2786. Expert testimony is inadmissible if the party proffering the testimony fails to demonstrate that it is scientifically grounded. Adcock v. Miss. Transp. Comm’n, 981 So.2d 942, 947 (Miss.2008). “Scientific knowledge means something more than unsupported speculation or subjective belief that is grounded in methods and procedures of science.” Poole, 908 So.2d at 723 (citing Daubert, 509 U.S. at 595, 113 S.Ct. 2786). While the existence of favorable peer review and publication is a relevant consideration, it is not dispositive of an opinion’s admissibility. Daubert, 509 U.S. at 594, 113 S.Ct. 2786. In Poole, this Court held that the trial court properly admitted a physician’s causation theory in the absence of peer review and publication because the theory constituted a medical opinion, not “mere conjecture akin to astrology.” Poole, 908 So.2d at 723.
¶ 67. The majority finds that the trial court properly excluded Dr. Fuselier’s opinions because the peer-reviewed articles submitted by Dr. Mills contradicted those opinions. The majority further finds that, under Smith v. Clement, 983 So.2d 285, 290 (Miss.2008), Hill was required to rebut Dr. Mills’s challenge to Dr. Fuselier’s testimony with “at least a minimal defense supporting the reliability of the opinion.” Maj. Op. at ¶ 41. In Smith, this Court affirmed the trial court’s exclusion of testimony by the plaintiffs expert, Dr. Forbes, based upon an affidavit of the defense expert, Nolen, which stated that Dr. Forbes’s opinions were not properly grounded in science. Id. at 289-90. The Court found that the only evidence on reliability before the trial court had been Nolen’s affidavit. Id. at 290. The Court stated that the plaintiff should have submitted rebuttal evidence supporting the reliability of Dr. Forbes’s opinions, such as a denial of the accuracy of Nolen’s affidavit. Id. In dissent, Chief Justice Waller wrote that the trial court’s finding that Dr. Forbes’s opinion was unreliable was itself based upon the unsubstantiated opinion of the opposing expert. Id. (Waller, C.J., dissenting). In Chief Justice Waller’s opinion, the trial court “simply took [No-len’s] word over that of Dr. Forbes,” although the conflicting affidavits actually created a fact question for the jury. Id. at 291-92. I agree with this analysis.
¶ 68. I agree with Chief Justice Waller’s analysis of the admissibility of Dr. Forbes’s testimony in Smith. Further, I believe that Smith should not be construed as engrafting a burden-shifting scheme upon Daubert’s reliability prong. Smith should stand for no more than the proposition that, while there is no requirement that a plaintiff rebut a defense challenge to the reliability of proffered expert testimony, further development of the medical evidence is encouraged when reliability is legitimately cast into doubt. The order in which the evidence is presented to the trial court should have no bearing upon the trial court’s assessment of the reliability of proffered expert testimony.
¶ 69. I turn to the proffered expert testimony in this case. Dr. Fuselier’s opinion was that, based on his twenty-five years of experience as an obstetrician, to a reasonable degree of medical probability, the administration of bed rest, pelvic rest, *338 hydration, and tocolytic drugs could have extended Hill’s pregnancy to the point of viability. This opinion conflicted with that of Dr. Morrison, which was supported by peer-reviewed articles, that these measures would not have been effective. The peer-reviewed literature submitted by Dr. Mills stated that bed rest, pelvic rest, and hydration are commonly prescribed by ob-steti’icians in an effort to prevent preterm delivery. Even Dr. Mills testified that, had he discovered Hill’s pregnancy on May 27, 2002, he would have placed Hill on pelvic rest, although he denied that this measure would have had any beneficial effect in preventing her subsequent miscarriage.
¶ 70. I believe that Dr. Fuselier’s testimony met the threshold requirements for reliability under the modified Daubert test, and that the trial court abused its discretion by excluding his testimony. Dr. Fuse-lier’s opinion on the effectiveness of bed rest, pelvic rest, hydration, and toeolytics is grounded in scientific validity because it is based upon his twenty-five years of experience treating obstetrical patients. Dr. Fuselier’s opinion is based upon the outcomes he had observed in the course of his experience as a qualified medical expert, not upon “unsupported speculation” or “mere conjecture.” See Adcock, 981 So.2d at 947; Poole, 908 So.2d at 723. Moreover, there was ample evidence that bed rest, pelvic rest, and hydration, measures advocated by Dr. Fuselier, are commonly ordered by obstetricians in an effort to prevent preterm delivery, indicating the general acceptance of these treatments by the medical community. Certainly, the support of peer-reviewed articles might have caused a jury to afford more weight to Dr. Morrison’s testimony than to that of Dr. Fuselier. However, “the reasonableness of an expert’s opinion and the weight to be afforded thereto” are always questions of fact for the jury. Daniels v. GNB, Inc., 629 So.2d 595, 602 (Miss.1993). Dau-bert instructs that “[vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.” Daubert, 509 U.S. at 596, 113 S.Ct. 2786. For these reasons, I would reverse the exclusion of Dr. Fuselier’s testimony and the grant of summary judgment on Hill’s wrongful-death claim.
GRAVES, P.J., JOINS THIS OPINION.