# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00404-COA

| | |
|---|---|
| **JIMMY W. ZEIGLER** | **APPELLANT** |

**v.**

| | |
|---|---|
| **TIM NOLAN AND NANETTE NOLAN** | **APPELLEES** |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2013 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. POWELL III |
| ATTORNEY FOR APPELLEES: | CHARLES W. WRIGHT JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | JURY VERDICT IN FAVOR OF APPELLEES |
| DISPOSITION: | AFFIRMED – 09/16/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ISHEE AND ROBERTS, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Jimmy W. Zeigler filed a complaint against his sister and brother-in-law, Tim and Nanette Nolan, in the Yazoo County Circuit Court, seeking damages for breach of contract. The Nolans answered, claiming that the contract was unenforceable. After a trial on the merits, the jury returned a verdict in favor of the Nolans. Zeigler filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied by the circuit court. Feeling aggrieved, Zeigler appeals and argues: (1) the circuit court improperly excluded expert testimony at trial; (2) the verdict is contrary to the overwhelming weight of the evidence; and (3) the verdict is the result of the jury's bias and prejudice.

¶2.     Finding no error, we affirm.

FACTS

¶3.　　In 1984, Zeigler moved out of his home, where he was living alone, and moved in with his parents. At that time, Zeigler's house had multiple defects, but according to Zeigler, the house was livable. In 1985, Tim asked Zeigler if he and his family could rent Zeigler's house until they were able to build or buy a new home of their own. Zeigler stated that he did not charge the Nolans rent, as the house needed some repairs. Zeigler claimed that Tim agreed to finish the bedroom, fix the hole in the ceiling, finish the garage, and work on anything else that needed to be finished in the house. The Nolans moved into the house, and Zeigler explained that he believed that they would only be in the house for a few months.

¶4.　　A couple of years later, the Nolans were still living in Zeigler's house and, according to Zeigler, had made some, but not all, of the repairs that they had agreed to make. According to Zeigler, he spoke with Tim about the other repairs that Tim had agreed to make. Zeigler contends that Tim gave an excuse but did not make the remaining repairs and continued to live in the house after that conversation. At some point, Zeigler claims that Tim told him that Tim could not afford to build a house for his family at that time and that it would be four or five more years before they could move out of Zeigler's house. Zeigler testified that he agreed to let the Nolans stay another four or five years; however, the Nolans lived in the house for a total of twenty-five years. Zeigler stated that he rarely visited the house while the Nolans were living there. He added that he was guilty of being easy-going and that he never made complaints about the lack of repairs that Tim had agreed to make. He stated that he passed the house often and could recognize that the house was in bad shape.

2

¶5.    Zeigler stated that by the time the Nolans moved out in June 2009, the house was "full of clutter and in a state of total disarray." According to Zeigler, he had another conversation with Tim regarding repairs after Tim and his family moved out; however, Tim did nothing. In December 2009, Zeigler had several pictures taken of the house that he claims depicted the condition of the house at the time the Nolans moved out. Zeigler claimed that after the photographs were taken, he talked to Nanette regarding damages to the house and asked her to find out if they were going to pay him for the damages. About two weeks later, Zeigler stated that he called Nanette, and she informed him that she and Tim would pay him for the damages. Zeigler also told Tim during that same phone call that he would examine the house to determine what needed to be fixed and how much it would cost to make the repairs. A couple of weeks later, according to Zeigler, he told the Nolans that it would cost $50,000 to repair the house, but no other conversations were had between him and the Nolans. The Nolans did not pay Zeigler. In April 2010, Zeigler received $30,000 from his insurance company for damage done to the house by a tornado. Zeigler claims that he did not spend the money to repair the house because the house was practically worthless after the tornado.

¶6.    According to Tim, Zeigler and Nanette's father insisted that the Nolans move into Zeigler's house in 1985. Tim maintained that he never agreed with Zeigler that, in lieu of rent, he would maintain and improve the house while Tim and Tim's family were living there. Tim explained that after he and his family moved into Zeigler's house, Zeigler came to visit regularly. Tim claimed that Zeigler told him that he and his family could stay in the house as long as they needed to, that Zeigler never asked for rent, and that Zeigler never

3

made any complaints about the condition of the house. Tim also stated that he spent about $75,000 working on Zeigler's house over the twenty-five-year period that he and his family lived in the house. Tim further stated that when Zeigler told him that Zeigler wanted $50,000 to repair his house, he told Zeigler that he did not have $50,000. Tim claimed that he and Zeigler did not make an agreement obligating Tim to pay the $50,000 and that he had not signed any such agreement.

¶7. Nanette affirmed that after talking to her father, she and her family decided to move into Zeigler's house in September 1985. She claimed that they never had any discussion with Zeigler about a rental agreement or contract. When they moved in, the condition of the house was fair, but unfinished. Nanette stated that they paid for all of the improvements made to the house during their stay there.

¶8. As stated, after the trial, the jury found in favor of the Nolans. Zeigler filed a motion for a JNOV or, in alternative, a new trial, which the circuit court denied. This appeal followed.

## DISCUSSION

*I. Real Estate Expert's Appraisal and Report*

¶9. Before the trial, the Nolans filed a motion in limine, requesting the exclusion of evidence and testimony of Russell Perry, Zeigler's real estate expert. During a *Daubert*[1] hearing, Perry testified that he did an appraisal on the house in 2011. He explained that he

---

[1] *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

4

had to base his report on the pictures that had been taken in 2009, as the house had been damaged by the 2010 tornado to such a degree that he would not have been able to do the appraisal when he examined the house in 2011. Perry stated that he used market data from the retrospective date, June 1, 2009, when appraising the property. He added that he did not know if he was the first appraiser that ever utilized the methodology of relying on pictures that depicted a home before it was destroyed to determine the value of the home. The Nolans objected and stated that because Perry's opinion was merely speculative and based on assumptions, neither his testimony nor his report should be admitted. The circuit court held that, under Rule 702 of the Mississippi Rules of Evidence, Perry's report was inadmissible and his appraisal was not reliable.

¶10. Zeigler claims that the court erred in finding that Perry's appraisal was not reliable and that his testimony and report were inadmissible. Appellate courts review the admission or exclusion of expert testimony for abuse of discretion. *Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 674 (¶14) (Miss. 2010). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Expert testimony admitted at trial must be based on scientific methods and procedures, not on unsupported speculation or subjective belief." *Hubbard*, 41 So. 3d at 675 (¶16) (citing *Miss. Dep't of Mental Health v. Hall*, 936 So. 2d 917, 928 (¶31) (Miss. 2006)).

5

"The trial judge assumes the critical role as a gatekeeper in assessing the value of proffered expert testimony." *Webb v. Braswell*, 930 So. 2d 387, 397 (¶16) (Miss. 2006). "The trial judge has the sound discreion to admit or refuse expert testimony[,] and the judge's decision will stand unless the discretion he used is found to be arbitrary and clearly erroneous." *Troupe v. McAuley*, 955 So. 2d 848, 856 (¶19) (Miss. 2007) (quoting *Poole v. Avara*, 908 So. 2d 716, 721 (¶8) (Miss. 2005)).

*Coastal Hardware & Rental Co. v. Certain Underwriters at Lloyds*, *London*, 120 So. 3d 1017, 1027 (¶46) (Miss. Ct. App. 2013).

¶11. Perry explained that he based his report and his appraisal on photos of the home that were taken in 2009, right after the Nolans had moved out, but before the tornado severely damaged the house. He stated, "My appraisal is based on those photos, okay. But I can't be for certain because I did not take the photos, nor did I see the house at that time, okay." However, in 2011, Perry examined the house in person to verify that the floor plans matched the pictures. He offered no authority for the proposition that it is acceptable in the real-estate-appraisal industry to render an appraisal based solely on pictures taken by someone else, although he did testify that followup appraisals, where a personal inspection of the property is not done, are common. He explained that in those cases, the initial inspection is done by an appraiser who actually inspected the premises and took pictures of the property. In the case before us, the pictures were taken for the property owner approximately two years prior to the property being appraised by Perry. As stated, when Perry performed the appraisal, the house had been largely destroyed. On these facts, we cannot find that the circuit court abused its discretion in not allowing Perry to testify as an expert concerning the value of the house in 2009 or in not allowing his report to be admitted into evidence. This

6

issue is without merit.

## II. Weight of the Evidence

¶12. Zeigler argues that the verdict in this case is contrary to the overwhelming weight of the evidence. "The standard of review for deciding whether or not a jury['s] verdict is against the overwhelming weight of the evidence is that [appellate courts] must accept the evidence which supports the verdict as the truth and will reverse only if convinced that the circuit court abused its discretion in not granting a new trial." *Richardson ex rel. Richardson v. DeRouen*, 920 So. 2d 1044, 1047-48 (¶7) (Miss. Ct. App. 2006) (citation omitted). A new trial will not be ordered unless allowing the verdict to stand would sanction an unconscionable injustice. *Id.* at 1048 (¶7).

¶13. Zeigler offers no argument as to how the verdict is against the overwhelming weight of the evidence. The court instructed the jury to return a verdict in favor of the Nolans if it found that (1) the parties did not enter into a valid and binding contractual agreement, or (2) the parties entered into a binding contractual agreement, but the Nolans did not breach the contractual agreement. Although the parties gave conflicting testimony, the evidence is sufficient to support a finding that the Nolans did not enter into a contract with Zeigler to maintain or improve Zeigler's home in lieu of rent or enter into an agreement to pay Zeigler $50,000 for repairs after they moved out of the home. It is the responsibility of the jury to resolve issues of credibility. "When evidence is conflicting, we defer to the jury's determination of the credibility of witnesses and the weight of their testimony." *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1061 (¶23) (Miss. 2012) (quoting *Bickham v. Grant,* 861 So.

2d 299, 307 (¶34) (Miss. 2003)). Here, the jury apparently accepted Tim's testimony as true. Therefore, the jury's verdict is not against the overwhelming weight of the evidence, and allowing the verdict to stand will not sanction an unconscionable injustice. This issue is without merit.

### III. Bias and Prejudice

¶14. Zeigler further contends that the verdict is the result of the jury's bias and prejudice because the circuit court allowed the Nolans to introduce irrelevant and prejudicial testimony. He argues that questions on cross-examination regarding the age of Zeigler's farm equipment, whether Zeigler paid his parents rent after he moved in with them, and whether Zeigler's father deeded him some land for a business, are all unrelated to his dispute with the Nolans.

¶15. "A new trial may be granted where the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty instruction, or when the jury has departed from its oath and its verdict is a result of bias, passion[,] or prejudice." *Id*. at 1070 (¶58) (quoting *Coho Res. Inc. v. Chapman*, 913 So. 2d 899, 908 (¶28) (Miss. 2005)). Zeigler does not provide any explanation as to how the testimony prejudiced him or created a bias among the members of the jury. Zeigler merely argues that some of the questions that were asked by the Nolans' counsel were not relevant to his dispute with the Nolans. However, the relevancy and admissibility of evidence are within the discretion of the circuit court. *Byrom v. State*, 863 So. 2d 836, 878 (¶150) (Miss. 2003). Based on the record, we cannot say that there was an abuse of discretion by the circuit court in allowing those questions and the

8

respective answers or that the questions and answers invoked bias or prejudice by the jury against Zeigler. This issue is without merit.

¶16. **THE JUDGMENT OF THE YAZOO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**