# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02301-SCT

*MATTIE CHEEKS, INDIVIDUALLY
AND AS ADMINISTRATRIX OF THE
ESTATE OF HENRY CHEEKS*

**v.**

*BIO-MEDICAL APPLICATIONS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/19/2003 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | FRANK C. JONES, III |
| | EDWARD BLACKMON, JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM B. LOVETT |
| | CHARLES T. OZIER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 08/04/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Mattie Cheeks, individually, and as the Administratrix of the Estate of Henry Cheeks, appeals from the Madison County Circuit Court's grant of summary judgment in favor of Bio-Medical Applications of Mississippi, Inc., d/b/a Bio-Medical Applications of Canton a/k/a Central Dialysis Unit of Canton.    Finding that Mattie's medical expert was not qualified to

testify on the issues raised regarding Bio-Medical's alleged negligence,[1] we affirm the circuit court's grant of summary judgment to Bio-Medical.

**FACTS**

¶2.     Mattie alleges as follows:   Henry, a 75-year old, was seen in the Madison County Medical Clinic emergency room on March 12, 2000, for wheezing and bleeding from the site where a shunt for dialysis had been implanted.  The bleeding was treated by the application of a dressing and elevating the arm.  Henry was then released.  Five minutes after his departure, the site began hemorrhaging heavily, and before he could get back to the emergency room, he was dead.  Mattie filed suit against the Madison County Medical Clinic; three doctors, Edward Schwab, M.D., Alva Dillon, M.D., Sybil Raju, M.D.; and Fresenius Medical Care, alleging medical malpractice and wrongful death and requesting damages for Henry's suffering and death, loss of enjoyment of life, loss of love, society and companionship, loss of relationship, severe permanent emotional distress and funeral expenses.   Bio-Medical filed a response to the complaint, stating that Mattie had improperly identified it as Fresenius Medical Care and denying that it had been negligent in any manner.

¶3.     Through discovery, Mattie designated William Truly, M. D., as her expert witness, and served a copy of his opinion.  It soon became evident that Dr. Truly could not testify for Mattie because of a conflict of interest (Dr. Truly was on staff at the Madison County Medical Clinic, a defendant in the lawsuit).   Therefore, Mattie substituted Ronald Myers, M. D., as her expert witness.

---

[1]Although Mattie raises other issues on appeal, we find that the question of Dr. Myers's qualifications is dispositive and do not reach the merits of the other issues.

¶4.    Dr. Myers's opinion produced during discovery stated that: (1) Bio-Medical failed to meet applicable standards of care for proper dialysis facilities practicing under like and similar circumstances; (2) Bio-Medical failed to administer the dialysis procedure properly; (3) Bio-Medical failed to monitor and/or observe Henry during the March 10, 2000, dialysis session; (4) Bio-Medical failed to discover that the graft/shunt was ruptured; (5) Bio-Medical used excessive force which damaged the graft/shunt; and (6) Bio-Medical failed to instruct and/or warn Henry of the risks associated with post-dialysis bleeding when accompanied with a damaged graft/shunt.

¶5.    During his deposition, Dr. Myers testified as follows:

> My opinion is that the type of graft . . . a vortex graft . . . was placed there in 1994 and was a very old graft, nine years old, and typically these grafts, on average, last from 18 [months] to two years and very rarely do you see a graft that old still being used; . . . [and there were] some complications that are associated with that graft being in use for that long a period of time.
>
> * * *
>
> [I base my opinion] upon what I've read and also my experience with talking to a nephrologist about grafts over the years. I think I also spoke to Dr. White over the years, the nephrologist in Greenwood, about these kind of issues, but typically a graft that old can be used, but it's very important to make sure it's functioning properly.
>
> [I have neither medically inserted a graft in a patient nor observed the graft that was in Mr. Cheeks' arm. I have no personal knowledge as to the condition of the graft on March 10, 2000.]
>
> [Bio-Medical was negligent in failing to supply Henry with written instructions on how to treat excessive bleeding following dialysis.]

3

¶6. Based on these written documents and deposition testimony, Bio-Medical filed a motion to exclude and/or strike and for summary judgment in which it alleged as follows: (1) the circuit court allowed Mattie to substitute Dr. Myers for Dr. Truly with the caveat that Dr. Myers's testimony could not exceed the scope of Dr. Truly's written opinion; (2) Dr. Myers's deposition testimony indicated that his opinion was that Bio-Medical was negligent because (a) it failed to recognize that the vortex graft was too old and should have been replaced, and (b) it failed to give Henry written instructions on how to treat excessive bleeding following dialysis; (3) these two subjects exceeded the scope of Dr. Truly's written opinion and should be stricken; (4) Dr. Myers's opinion regarding the age of the vortex graft exceeded the scope of his expert designation; (5) Dr. Myers was not competent or qualified to give opinions as to the age, the condition, or the needed replacement of the vortex graft; (6) Dr. Myers's opinion pertaining to the age of the graft and the need of replacement did not have a proper basis; (7) Dr. Myers was not competent or qualified to testify as to the standard of care for Bio-Medical; (8) Dr. Myers's testimony failed to establish by a reasonable degree of medical certainty and/or probability that the age of the vortex graft was a cause of Henry's death; and (9) Dr. Myers's opinion concerning a requirement that patients be given written instructions for post-dialysis care failed to establish by a reasonable degree of medical certainty and/or probability that Bio-Medical was negligent inasmuch as Henry followed the oral instructions given to him by Bio-Medical and Dr. Myers's opinion as to what he should have done if he experienced bleeding from the graft site – apply pressure and then go to a hospital if needed.

¶7. Bio-Medical's motion to exclude and/or strike and for summary judgment was granted and certified as a final judgment under M.R.C.P. 54(b), and Mattie appeals.

4

# DISCUSSION

## WHETHER THE CIRCUIT COURT ERRED IN GRANTING
## SUMMARY JUDGMENT IN FAVOR OF BIO-MEDICAL.

¶8.    To present a prima facie case of medical malpractice, a plaintiff, (1) after establishing the doctor-patient relationship and its attendant duty, is generally required to present expert testimony (2) identifying and articulating the requisite standard of care; and (3) establishing that the defendant physician failed to conform to the standard of care.   In addition, (4) the plaintiff must prove the physician's noncompliance with the standard of care caused the plaintiff's injury, as well as proving (5) the extent of the plaintiff's damages.   *McCaffrey v. Puckett*, 784 So. 2d 197, 206 (Miss. 2001) (citing *Ladner v. Campbell*, 515 So. 2d 882, 887-88 (Miss. 1987)).   A physician who is sufficiently "familiar with the standards of [a medical] specialty, [may testify as an expert, even] though he [does] not practice the specialty himself." *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 718-19 (Miss. 1995). "[I]t is our general rule that in a medical malpractice action negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care." *Brooks v. Roberts*, 882 So. 2d 229, 232 (Miss. 2004) (citing *Sheffield v. Goodwin*, 740 So. 2d 854, 858 (Miss. 1999)).


¶9.    In order to testify, Dr. Myers, a family physician, must have been familiar with the standard of care to which a dialysis clinic, a nephrologist and a radiologist are held. *McCaffrey*, 784 So. 2d at 203.   Dr. Myers was not board certified in family practice or any other specialty; was not a member of the American Medical Association; was not on staff at

5

any hospital and could not admit patients to any hospital; had no special training or experience in the field of nephrology; had never been inside a dialysis clinic in Mississippi; had never participated in a dialysis procedure; had never operated a dialysis machine; had never monitored a patient while he was receiving the actual dialysis treatment; relied on the expertise of a nephrologist when determining whether one of his patients was receiving the appropriate type of dialysis treatment or responding to the treatment as he should; had never inserted a gortex graft; had never seen a graft inserted into a patient; had never inserted a dialysis needle into a graft; had never inspected a graft which was implanted in a patient; had never recommended that a graft be replaced; was, by his own admission, not qualified to render opinions as to when or whether a graft should be replaced, because these medical opinions fall within a specialized area in which he had no experience or training; had never read any literature on the specific type of graft at issue; and did not know who manufactured the graft in question or the manufacturer's recommendation as to the life of the graft. Dr. Myers further admitted that it was the job of a radiologist to determine whether a particular graft is functioning properly; that a radiologist inspected Henry's graft approximately 30 days prior to Henry's death and found it to be operating properly; and that he (Dr. Myers) could find nothing wrong with that radiologist's report.

¶10. Even though Dr. Myers stated that Bio-Medical was negligent by not providing Henry with written instructions, he admitted that Henry did exactly what he should have done when he first began to experience the bleeding – apply pressure and then go to the emergency room if needed.

6

¶11.   We find that, under M.R.E. 702,[2] Dr. Myers did not have the specialized knowledge to assist the trier of fact to understand the evidence concerning the dialysis procedure or the condition of the graft. *West*, 661 So. 2d at 719 (where plaintiff did not establish that her expert, an oncologist, was familiar with the standard of care of a gastroenterologist, expert's testimony was properly stricken); *Thompson v. Carter*, 518 So. 2d 609, 616-17 (Miss. 1987). Therefore, Mattie's claim of negligence against Bio-Medical fails. *Sheffield v. Goodwin*, 740 So. 2d 854, 856 (Miss. 1999) ("Absent error so obvious that a layman could easily determine fault, expert testimony is generally required to survive summary judgment and establish the negligence of a physician.")

## CONCLUSION

¶12.   Because Dr. Myers was not competent to offer opinions as to the standard of care of dialysis clinics, the appropriate monitoring of the dialysis process or the appropriate procedures in inserting and maintaining dialysis grafts, we affirm the circuit court's grant of summary judgment to Bio-Medical Applications, Inc.

¶13.   **AFFIRMED.**

**SMITH, C.J., COBB, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

---

[2]Rule 702 (as it existed at the time of the circuit court's ruling) of the Mississippi Rules of Evidence provided that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training or education, may testify thereto in the form of an opinion or otherwise.