# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00969-COA

## CONSOLIDATED WITH

## NO. 2022-CA-00186-COA

WHITNEY LOREN LEE, INDIVIDUALLY AND ON BEHALF OF ALL STATUTORY WRONGFUL DEATH BENEFICIARIES OF LISA LEE, DECEASED                                    APPELLANT

v.

JEFFREY DOOLITTLE, M.D., AND GREENVILLE SURGICAL CLINIC, P.A.                                    APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/2023 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID D. O'DONNELL |
| | ELLIS TURNAGE |
| ATTORNEYS FOR APPELLEES: | L. CARL HAGWOOD |
| | DAVID MARK EATON |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 04/15/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     This appeal is brought by Whitney Lee (Whitney) on behalf of the wrongful death beneficiaries of her mother Lisa Lee (Lisa). Whitney argues that the Washington County Circuit Court abused its discretion when it excluded the testimony of her proposed expert and granted summary judgment in favor of the Defendants. After a review of the record, we find that the circuit court abused its discretion in striking the Plaintiff's expert, and therefore we

reverse and remand.[1]

## FACTS AND PROCEDURAL HISTORY

¶2.     At the time of her death, Lisa was fifty years old and had a past medical history of arthritis, diabetes, fibromyalgia, hepatitis, hypertension, liver disease, migraine, morbid obesity, and valvular heart disease. Lisa went to the emergency department at Delta Regional Medical Center (DRMC) in Greenville, Mississippi, on February 12, 2018, presenting with weakness, nausea, and vomiting. Lisa was first seen by Dr. Hilton O'Neal, an emergency department physician, who diagnosed Lisa with liver pain and with cryptogenic cirrhosis (liver disease). She was admitted as an inpatient for further care under Dr. Parvez Karim, an internal medicine doctor, who diagnosed her with autoimmune hepatitis. She was labeled as a possible sepsis risk with signs of jaundice and elevated liver functions.[2]

¶3.     On February 13, 2018, Lisa underwent an abdominal ultrasound. As concluded by Dr. Singh, the ultrasound revealed she had gallstones with an impression of "cholelithasis (gallstones) with evidence of cholecystitis (inflammation)." Following the ultrasound, Dr. Singh consulted Dr. Jeffrey Doolittle, a general surgeon. Dr. Doolittle's note on the consultation indicated that Lisa was diagnosed in 2010 with autoimmune hepatitis with cirrhosis of the liver and that she was at end-stage liver disease. After considering the

---

[1] The supreme court consolidated Whitney's first appeal, which had been dismissed for lack of a final judgment, for record purposes only.

[2] Prior to her admission at DRMC, Lisa had been a patient of Dr. Pradeep Thakare, a gastroenterologist in Greenville, for management of her autoimmune hepatitis. In the past, Lisa had also been referred to Memphis to the service of Dr. Satheesh Nair, a transplant surgeon at Methodist University Hospital Transplant Institute.

ultrasound, her abnormal lab values, her medical history, and after conducting a physical examination, Dr. Doolittle concluded that Lisa had end-stage liver disease and was not a surgical candidate. He did not think that she had cholecystitis. Lisa's gastroenterologist, Dr. Thakare, saw her the next day and noted that she was now asymptomatic, that she should avoid surgery, and that she was to follow up with Dr. Nair, the transplant surgeon in Memphis. Her internist, Dr. Karim, noted that she had gallstones and possible cholecystitis, that she was on IV antibiotics, that (as noted by Dr. Doolittle) she was not a surgical candidate given her multiple co-morbidities, and that Lisa understood her prognosis.

¶4.    From February 15 to 18, 2018, Lisa showed slow improvement with the assistance of different medications and was discharged on February 19. Two days later, on February 21, Lisa went to the emergency room at Bolivar Medical Center (BMC) with signs of weakness and confusion. At BMC, Lisa was diagnosed with sepsis and was subsequently transferred to Merit Health Center (MHC) in Jackson, Mississippi, for further care. While at MHC, Lisa was pronounced deceased. Her death certificate states her cause of death as cardiopulmonary arrest due to or as a consequence of urosepsis. Whitney, Lisa's daughter, brought this medical malpractice action on behalf of Lisa's wrongful death beneficiaries against DRMC, Greenville Surgical Clinic P.A., Dr. Doolittle, Premier Medical Clinic of Greenville, P.C., Dr. Karim, Seark Radiology, P.A., and Dr. Pritchard.

¶5.    Whitney sought to designate Dr. Scott A. Resnick as an expert witness. Dr. Resnick is a board certified interventional radiologist[3] licensed to practice in Illinois. He has been a

_____

[3] The Johns Hopkins Medicine website defines interventional radiology as "a medical sub-specialty of radiology utilizing minimally-invasive image-guided procedures to diagnose

3

professor within the Division of Vascular Surgery at Northwestern Memorial Hospital since 2018.[4] At Northwestern, he has served on the Surgical Services Executive Committee as well as on the Bluhm Cardiovascular Center Invasive Services Committee. He is a past member of the Society of Vascular Surgery. His publication history includes being lead author on a paper related to percutaneous procedures and co-author on other publications related to vascular and cardiovascular surgery and interventional radiology. His extensive presentation history includes "Endovascular Management of Vascular Complications in Liver Transplant Patients." His training included a transitional medical-surgical internship.

¶6. Dr. Resnick averred in his affidavit that he was "generally familiar with the facilities, resources, services, equipment and options that were available to Dr. Jeffrey Doolittle, a board certified general surgeon who undertook and performed a consultation of Lisa at the request of Dr. Parez Karim on February 14, 2018 at DRMC." Further, Dr. Resnick contended he was "familiar with the national standard of care for a physician that provides medical care for an adult patient who has been admitted to a community hospital by an Internal Medicine Physician with clinical signs and symptoms of cholecystitis similar to Lisa Lee's." Dr. Resnick also stated that he was "advised of the legal standard in Mississippi concerning the

---

and treat diseases in nearly every organ system. The Johns Hopkins University, Interventional Radiology, "What is Vascular and Interventional Radiology," https://www.hopkinsmedicine.org/interventional-radiology/what-is-ir#:~:text=The%20concept%20behind%20interventional%20radiology,in%20compariso n%20to%20open%20surgery (last visited Apr. 8, 2025). "The concept behind interventional radiology is to diagnose and treat patients using the least invasive techniques currently available in order to minimize risk to the patient and improve health outcomes." *Id.*

[4] He began teaching as an assistant professor in the Division of Vascular Surgery in 2004, and he became an associate professor in the Division of Vascular Surgery in 2009.

concept of a reasonable prudent minimally competent emergency room physician practicing in the United States of America with similar facilities, options, services and equipment as existed during Lisa Lee's admission to Delta Regional Medical Center (DRMC) on February 12-19, 2018."

¶7. Dr. Resnick's proffered opinions included this assertion:

> In my opinion based upon a reasonable degree of medical probability, this was a preventable death, directly attributed to Dr. Doolittle's failure to resolve the discrepancy between his clinical conclusion that Ms. Lee did not have cholecystitis and that reached by Dr. Singh and the diagnostic ultrasound that Ms. Lee did have cholecystitis, and the subsequent failure to place a drainage tube to decompress and drain her gallbladder failed to meet the nationwide standard of care for diagnosis and treatment of sepsis.

In Dr. Resnick's opinion, Dr. Doolittle did not meet the applicable standard of care because he should have ordered or recommended further diagnostic testing, "such as a HIDA scan or CT scan," and "[t]he cause of the florid sepsis that led to Lise Lee's death was untreated gallbladder outflow obstruction and cholecystitis." Further, "percutaneous cholecystostomy tube (gallbladder drain) placement is a simple and routinely performed non-surgical procedure. Percutaneous cholecystostomy tube placement is regularly performed on even the most critically ill patients, with low risk for bleeding or other complications." According to Dr. Resnick, both interventional radiologists and general surgeons perform this procedure.

¶8. The circuit court granted Dr. Doolittle's motion to strike Dr. Resnick's designation as an expert. The trial court's order stated that "Dr. Resnick's curriculum vitae contains no education, training or experience which would qualify him to render opinions related to the standard of care for [a] general surgeon determining a candidate for surgery, such as the

5

review performed by Dr. Doolittle on the Plaintiff." The circuit court also highlighted that Dr. Resnick gave no statement "that he evaluates and determines whether patients are candidates for surgical procedures end-stage liver disease" and emphasized that Dr. Resnick failed to state that he had actually performed or recommended a gallbladder drain placement. The circuit court concluded that "Dr. Resnick . . . failed to demonstrate that he is sufficiently familiar with the applicable standard of care for the performance of general surgery at issue, that is, whether [Lisa] Lee was a candidate for surgery."

¶9. Now on appeal, Whitney asserts that the circuit court abused its discretion in striking Dr. Resnick as an expert witness and erred in granting summary judgment.

## STANDARD OF REVIEW

¶10. The appellate court reviews "the trial court's decision to exclude the . . . experts' testimony for abuse of discretion[,] [b]ut [the appellate court] reviews the court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the summary-judgment motion has been made." *Est. of Ward v. Williams*, 333 So. 3d 44, 48 (¶14) (Miss. Ct. App. 2021) (quoting *Hyde v. Martin*, 264 So. 3d 730, 734 (¶14) (Miss. 2019)).

## DISCUSSION

¶11. In order to establish a prima facie case of medical malpractice under Mississippi law, it is the plaintiff's burden to prove by a preponderance of the evidence (1) the applicable standard of care, (2) a failure to conform to the required standard, and (3) an injury proximately caused by a defendant's noncompliance with the standard. *Smith v. Hardy*

6

*Wilson Mem'l Hosp.*, 300 So. 3d 991, 997 (¶16) (Miss. 2020) (quoting *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 523 (¶12) (Miss. 2019)). As a general rule, in medical malpractice cases each of these elements must be established through medical-expert testimony, and the expert must articulate and identify the standard of care that was breached and establish that the breach was the proximate cause or a proximate contributing cause of the alleged injury. *See Hubbard v. Wansley*, 954 So. 2d 951, 957 (¶12) (Miss. 2007).

¶12. "In regard to the admissibility of expert witness testimony, the trial judge is to act as a gatekeeper, ensuring that expert testimony is both relevant and reliable." *Yerks v. Trest*, 246 So. 3d 956, 959 (¶9) (Miss. Ct. App. 2018) (quoting *Barrow v. May*, 107 So. 3d 1029, 1035 (¶14) (Miss. Ct. App. 2012)). "Mississippi law requires the trial court to ensure that proposed testimony satisfies Rule 702 of the Mississippi Rules of Evidence." *Scafidi v. Hille*, 180 So. 3d 634, 659 (¶95) (Miss. 2015) (quoting *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 146 (¶15) (Miss. 2007)). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

MRE 702.

¶13. Our supreme court has held:

> "[U]nder Mississippi Rule of Evidence 702, expert testimony should be admitted only when the trial court can affirmatively answer a two-fold inquiry. The first prong mandates that a witness must be qualified by virtue of his or her knowledge, skill, experience, or education. Second, the witness's

7

scientific, technical, or other specialized knowledge must assist the trier of fact to understand or decide a fact in issue. Put simply, the expert's proposed testimony must be both relevant to the case at hand and based on reliable methodology. This standard is generally known as the *Daubert* standard."

*Clark v. State*, 315 So. 3d 987, 995-96 (¶16) (Miss. 2021) (citations and internal quotation marks omitted).

¶14.    "Generally, it is not required that an expert in a medical-malpractice case be of the same specialty as the doctor about whom the expert is testifying." *Est. of Ward*, 333 So. 3d at 49 (¶16) (quoting *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 181 (¶15) (Miss. 2009)).  Our supreme court has consistently held that a physician who is sufficiently "familiar with the standards of a medical specialty[] may testify as an expert[] even though he does not practice the specialty himself." *Cheeks v. Bio-Med. Apps. Inc.*, 908 So. 2d 117, 120 (¶18) (Miss. 2005); *see also Sacks v. Necaise*, 991 So. 2d 615, 622 (¶23) (Miss. Ct. App. 2007).

¶15.    "It was not our intent to adopt a uniquely restrictive standard by holding that only a specialist can testify about the standards of his own specialty." *Partin v. N. Miss. Med. Ctr. Inc.*, 929 So. 2d 924, 931 (¶22) (Miss. Ct. App. 2005). Rather, "[i]t is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of admissibility." *McDonald*, 8 So. 3d at 181 (¶15) (emphasis added) (quoting *West v. Sanders Clinic for Women P.A.*, 661 So. 2d 714, 719 (Miss. 1995)). "However, the expert still must show satisfactory familiarity with the specialty of the defendant doctor in order to testify as to the standard of care owed to the patient." *Id.*

¶16.    On appeal, Lisa's wrongful death beneficiaries argue that the circuit court erred in focusing on whether Dr. Resnick was qualified to offer an opinion on the standard of care

8

a general surgeon is held to when evaluating whether a patient in Lisa's condition was a candidate for surgery. Resnick's proffered opinions did not address whether Lisa was a candidate for surgery.[5] Instead, his opinions address Dr. Doolittle's misdiagnosis of cholecystitis and failure to recommend a routine, non-surgical percutaneous procedure to drain the gallbladder. Therefore, the relevant question should be whether Dr. Resnick is qualified to testify to the standard of care a general surgeon should have exercised in reviewing the results of the ultrasound that, here, resulted in a purported mis-diagnosis of Lisa's condition. The Plaintiff's lawsuit does not allege a breach of care related to the unanimous position of the medical professionals that the decedent was not a candidate for surgery.

¶17.    We agree. Our caselaw demonstrates a generous application of the principle that a physician who is sufficiently "familiar with the standards of a medical specialty, may testify as an expert, even though he does not practice the specialty himself." *Cheeks*, 908 So. 2d at 120 (¶8). An expert's threshold familiarity with the relevant standard of care relates to the defendant's specialty and also to the specific diagnosis and treatment at hand. *See Hubbard*, 954 So. 2d at 958 (¶19) (explaining the relevant analysis was whether the neurosurgeon expert was familiar with the standard of care an internal medicine specialist should exercise in treating a subarachnoid hemorrhage).

¶18.    Here, Dr. Resnick's training, experience, and education (including his education of others) indicate a familiarity with the standard of care for a general surgeon diagnosing and

        [5] All medical professionals and all proposed experts for trial were in agreement that Lisa was not a surgical candidate. This question is not disputed.

recommending non-surgical treatment options for a patient in Lisa's condition. The Plaintiff did not proffer his opinions for the purpose of challenging whether Lisa was eligible for surgery. Dr. Resnick's opinions indicated that Dr. Doolittle's diagnosis was directly contradicted by "the objective imaging findings of cholecystitis." Further, "[p]ercutaneous cholecystostomy tube (gallbladder drain) placement is a simple and routinely performed non-surgical procedure" performed by both interventional radiologists and general surgeons.

¶19.    The circuit court, in addition to erroneously focusing on the standard of care to determine whether the patient was a candidate for surgery, placed an overly narrow emphasis on the fact that Dr. Resnick did not state that he has performed the treatment procedure he would have recommended. The dissent similarly places overdue weight on this consideration. *See* Dis. Op. ¶32. While relevant, experience performing the exact procedure at issue is not a requirement for qualification as an expert. Under Rule 702, an expert may be qualified by "knowledge, skill, experience, training *or* education." (Emphasis added). And as clearly indicated by the existence of the broad general rule permitting experts to be from a different specialty altogether, this narrow consideration should not be dispositive.

¶20.    Our caselaw indicates that the standards for evaluating an expert's qualification are generally broad. For example, an expert's qualification in a specialty does not curtail the expert's ability to testify to a more broadly applicable standard of care. In *West v. Sanders*, our supreme court observed, "[W]e did not intend to restrict a specialist from offering his opinion as to what standards a general practitioner should adhere to" when announcing the general rule than an expert must be knowledgeable in the specialty of the defendant. *West*,

661 So. 2d at 718. Further, a "specialist may testify as to the standard of care that a general medical practitioner should follow when performing a recognized medical procedure." *Id.* at 720.

¶21.    While the plaintiff must present at least one expert who can testify to the standard of care applicable to a defendant, an expert can still qualify to testify at trial as long as there is sufficient familiarity with the standard of care of a defendant's specialty. In *Estate of Ward v. Williams*, 333 So. 3d 44 (Miss. Ct. App. 2021), this Court unanimously held that a nephrologist could serve as an expert in the context of a defendant who was an emergency room physician treating a patient at risk of renal failure. *See id.* at 45 (¶1). In support of his qualifications to opine that the doctor was negligent in ordering repeated contrast-enhanced CT scans despite the patient's signs of renal failure, the nephrologist asserted, "I am very familiar with the standards regarding the administration of contrast to patients with kidney disease," and "I am familiar with the practice of emergency medicine, specifically related to the use of IV contrast in patients who are in the emergency room." *Id.* at 47 (¶24). In finding that the expert was qualified, we noted that his "proposed opinion remained within his realm of nephrology . . ." and that "it is still within his realm of expertise to discuss the standard of care surrounding CT scans in relation to kidneys." *Id.* at 49. *See also Partin*, 929 So. 2d at 930 (¶¶19-20).

¶22.    Our appellate courts will affirm a trial court's refusal to accept a medical expert witness when the record is devoid of evidence supporting that the expert has knowledge of the standard of care for the defendant's specialty. *Fipps v. Greenwood Leflore Hosp.*, 237 So.

11

3d 194, 197 (¶11) (Miss. Ct. App. 2018). In *Fipps*, we deferred to the trial court's observation that "nothing exists 'in [the proposed expert's] deposition from which this court can determine that [he] is familiar with and/or possesses knowledge of the standard of care in the speciality of gastroenterology.'" *Id.* at (¶10). Instead, the proposed expert "simply opined as to what he would have done as a general surgeon in a similar situation." *Id.; see also McDonald*, 8 So. 3d at 178 (¶¶5-7).

¶23. Here, unlike in *Fipps* and similar cases, the record does support Dr. Resnick's familiarity with the standard of care in the field of general surgery, particularly as would relate to the relevant diagnosis and treatment at issue. In addition to satisfying the basic qualification of familiarity with the standard of care of a general surgeon performing this routine diagnosis, Dr. Resnick is particularly qualified to testify on the specific diagnosis and treatment of cholecystitis. Both interventional radiologists and general surgeons perform the relevant diagnosis and treatment. Dr. Resnick stated in his affidavit that he is "familiar with the national standard of care for a physician that provides medical care for an adult patient who has been admitted to a community hospital by an Internal Medicine Physician with clinical signs and symptoms of cholecystitis similar to Lisa Lee's." Dr. Resnick also stated that he is familiar with the "legal standard in Mississippi concerning the concept of a reasonable prudent minimally competent emergency room physician." Lastly, Dr. Resnick asserted that he was "generally familiar with the facilities, resources, services, equipment and options that were available to Dr. Jeffrey Doolittle."

¶24. "It is the scope of the witness' knowledge and not the artificial classification by title

that should govern the threshold question of admissibility." *McDonald*, 8 So. 3d at 181 (¶15). Dr. Resnick's averments, combined with his knowledge, training, and education, provided him with sufficient familiarity to testify to the standard of care that should be followed by a general surgeon when diagnosing a patient with the decedent's condition.

**CONCLUSION**

¶25. For all the foregoing reasons, we find that the circuit court abused its discretion in striking Dr. Resnick as an expert witness. Therefore, we reverse the order granting summary judgment and remand this case for further proceedings consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

**McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., EMFINGER AND ST. PÉ, JJ.**

**CARLTON, P.J., DISSENTING:**

¶27. I respectfully dissent from the majority's opinion to reverse and remand this case for further proceedings that allow Dr. Resnick to testify as an expert witness. After my review, I find that the record contains sufficient evidence to support the circuit court's finding that Dr. Resnick was not qualified to testify as to the standard of care for Dr. Doolittle. I therefore find that the circuit court did not abuse its discretion in striking Dr. Resnick as an expert witness.

¶28. We review a circuit court's determination as to an expert witness's qualifications for an abuse of discretion, "which has been referred to in medical-expert cases as having the widest possible discretion." *Fipps v. Greenwood Leflore Hosp.*, 237 So. 3d 194, 196 (¶8)

13

(Miss. Ct. App. 2018) (internal quotation marks omitted). "Absent an abuse of discretion, a judge's determination as to the qualifications of an expert witness will remain undisturbed on appeal." *Hubbard v. Wansley*, 954 So. 2d 951, 956 (¶11) (Miss. 2007).

¶29. Here, Whitney filed a medical malpractice action against several defendants, including Dr. Doolittle. The supreme court has articulated the elements that a plaintiff must prove to make a prima facie case for medical malpractice:

> (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

*Id*. at 956-57 (¶12). To prove each of these elements, expert testimony is required. *Id*. at 957. "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id*.

¶30. Mississippi Rule of Evidence 702 governs the admission of expert testimony. *Id*. at (¶13). Rule 702 provides that a witness may testify as an expert if the witness is "qualified as an expert by knowledge, skill, experience, training, or education" and "if: (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." MRE 702.

¶31. The record shows that Whitney filed an expert witness designation identifying Dr. Resnick, an interventional radiologist, as an expert witness against Dr. Doolittle, a general surgeon. Whitney submitted Dr. Resnick's curriculum vitae and an affidavit from Dr.

14

Resnick explaining his qualifications to give expert testimony in this case. Dr. Doolittle filed a motion to strike Dr. Resnick's designation as an expert and a motion for summary judgment. After a hearing, the circuit court ultimately entered an order striking Dr. Resnick as an expert witness and granting summary judgment in favor of Dr. Doolittle.

¶32. In its order, the circuit court held that Dr. Resnick was not qualified under Rule 702 "to render opinions related to the standard of care applicable to a general surgeon determining whether or not decedent Lisa Lee was a surgical candidate[.]" The circuit court explained that Dr. Resnick's CV "contain[ed] no education, training or experience which would qualify him to render opinions related to the standard of care for a [g]eneral [s]urgeon to determine whether a patient is a candidate for surgery." The circuit court also found that Dr. Resnick "offered no examples of his experience as a[n] [i]nterventional [r]adiologist in the situation faced by Dr. Doolittle." Although Dr. Resnick stated in his affidavit that "gallbladder drain placement is a simple and routinely performed procedure," the circuit court found that Dr. Resnick "did not state that he had performed this procedure nor that he had actually recommended this procedure[.]" Additionally, the circuit court held that Dr. Resnick failed to provide any statement reflecting "that he evaluates and determines whether patients are candidates for surgical procedures for end stage liver disease." Based on these findings, the circuit court determined that "Dr. Resnick has failed to demonstrate that he is sufficiently familiar with the applicable standard of care for the performance of general surgery at issue, that is, whether Lee was a candidate for surgery."

¶33. The majority finds that Dr. Resnick's "proffered opinions did not address whether

15

Lisa was a candidate for surgery" but rather reflect that Dr. Doolittle misdiagnosed cholecystitis and "fail[ed] to recommend a routine, non-surgical percutaneous procedure to drain the gallbladder." Maj. Op. ¶16. However, a review of Dr. Resnick's affidavit shows that his proffered opinions includes his opinion as to how a general surgeon should proceed in a case where the surgeon is asked by the treating physician[6] to provide a surgical consult for cholelithiasis (gall stones) and "possible cholecystitis" (gall bladder inflammation) *and then determines that the patient is not a surgical candidate*: "Upon reasonably concluding [Lisa] not to be a surgical candidate, Dr. Doolittle failed to recommend nonsurgical options for gallbladder decompression such a percutaneous cholecystostomy tube placement."

¶34. Regardless, I find that the relevant question is whether Dr. Resnick can demonstrate satisfactory familiarity with Dr. Doolittle's specialty of general surgery. As explained by our supreme court, while "[i]t is generally not required that an expert testifying in a medical malpractice case be of the same specialty as the doctor about whom the expert is testifying[,]" the expert witness *must* demonstrate "[s]atisfactory familiarity with the specialty of the defendant doctor" before the witness will be permitted to testify and offer opinions "as to the standard of care owed to the plaintiff patient." *Hubbard*, 954 So. 2d at 957 (¶13); *see also Poole ex rel. Poole v. Avara*, 908 So. 2d 716, 724 (¶16) (Miss. 2005) ("[T]he expert must exercise the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."). I find evidence supporting that Dr. Resnick

---

[6] As explained by the majority, Lisa was admitted "as an inpatient for further care under Dr. Parvez Karim, an internal medicine doctor." Maj. Op. ¶2. The record is unclear whether Dr. Karim or Dr. Singh, the infectious disease doctor, initiated Dr. Doolittle's surgical consult.

16

failed to demonstrate "satisfactory familiarity" with the applicable standard of care of a surgeon relevant to the case before us and that, therefore, he was not qualified to testify as an expert against Dr. Doolittle and offer opinions as to the standard of care owed to Lisa. After reviewing the record, including Dr. Resnick's affidavit and CV, and keeping in mind that "trial courts have the widest possible discretion in medical-expert cases," I find that the circuit court did not abuse its discretion in striking Dr. Resnick as an expert. *Fipps*, 237 So. 3d at 197 (¶11).

¶35.    Additionally, because I find that the circuit court did not abuse its discretion in striking Dr. Resnick as an expert, I would affirm the circuit court's grant of summary judgment in favor of Dr. Doolittle. *See Miss. Baptist Med. Ctr. Inc. v. Phelps*, 254 So. 3d 843, 845 (¶7) (Miss. 2018) ("When a plaintiff fails to provide expert testimony establishing a prima facie case of medical malpractice, generally, a grant of summary judgment is required."). Accordingly, I dissent.

**BARNES, C.J., EMFINGER AND ST. PÉ, JJ., JOIN THIS OPINION.**