ROBERTS, J.,
for the Court.
¶ 1. Margery McDaniel (McDaniel) brought this suit for medical malpractice in the Circuit Court of Alcorn County against Magnolia Regional Health Center and Dr. Nanni Pidikiti (Dr. Pidikiti). The trial court dismissed the cause of action against Dr. Pidikiti because McDaniel failed to designate an expert witness within a court-ordered deadline. McDaniel now appeals and raises the following issues:
I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN STRIKING THE TESTIMONY OF PLAINTIFF’S EXPERT, DR. JAMES SHAMBLIN.
II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT THE PLAINTIFF AN EXTENSION OF TWENTY-ONE DAYS TO DESIGNATE ADDITIONAL EXPERTS AND IN GRANTING SUMMARY JUDGMENT WITHOUT A HEARING.
Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Dr. Pidikiti, a cardiologist, performed a femoral angiogram on Terrell McDaniel (Terrell) at Magnolia Regional Health Center (Magnolia) on February 16, 1999. On that date, Terrell was seventy-four years old, and he had significant health problems. Terrell initially visited the doctor complaining of leg pain, leg weakness, and passing blood in his urine. Terrell, a long-term smoker, also had high blood pressure, lung disease, and back problems. A femoral angiogram requires dye to be injected into the patient’s femoral artery. Due to the calcification (hardening) of Terrell’s arteries, Dr. Pidikiti was unable to access Terrell’s femoral artery. Instead, Dr. Pidikiti in *955 jected the dye into Terrell’s left external iliac artery. The femoral angiogram indicated that Terrell had serious blood clots or plaque buildup in the blood vessels of his legs. Following the procedure, Terrell experienced internal bleeding and was transferred to North Mississippi Medical Center (NMMC). At NMMC, a vascular surgeon repaired the damage to Terrell’s artery. After this initial surgery, the vascular surgeon explained to Terrell and his wife that Terrell had very poor blood circulation in his leg due to extensive plaque buildup and that amputation was recommended. Terrell instead decided that he would undergo a higher risk operation in an attempt to save his leg. The second surgery was performed, but Terrell unfortunately died six days after being transferred to NMMC. Terrell’s death certifí-cate indicates his cause of death as sepsis or an infection.
¶ 3. McDaniel brought this suit for medical malpractice and wrongful death on February 9, 2001. The proceeding was stayed on July 14, 2003, because Dr. Pidik-iti’s malpractice insurance company was being forced into receivership. The stay was finally lifted on January 3, 2006.
¶ 4. McDaniel designated Dr. James A. Shamblin, a general surgeon, as her only expert witness. Dr. Shamblin testified in his deposition that Dr. Pidikiti’s conduct fell below the standard of care by entering the wrong artery while performing the femoral angiogram. Dr. Shamblin stated that the femoral artery is used in this procedure because it is located just below the skin and pressure can be applied to the artery to stop bleeding. Dr. Shamblin explained that the external iliac artery is not used because there is no way to apply pressure due to the artery’s location in the abdomen. Dr. Shamblin further stated that: Dr. Pidikiti should not have performed a femoral angiogram on Terrell; Dr. Pidikiti should have consulted a vascular surgeon when internal bleeding occurred; and Terrell should not have been given blood-thinning medication. On October 20, 2006, Dr. Pidikiti filed a motion to strike the testimony of McDaniel’s expert witness, Dr. Shamblin. The trial court took Dr. Pidikiti’s motion under advisement.
¶ 5. The trial court granted Dr. Pidikiti’s motion to strike the testimony of Dr. Shamblin on December 18, 2007. The trial court held that Dr. Shamblin, a general surgeon, was not qualified to testify as an expert in the specialized area of cardiology and vascular procedures.' Additional facts that the trial court relied on regarding Dr. Shamblin’s qualifications will be addressed below, as needed.
¶ 6. On January 4, 2008, Dr. Pidikiti filed a renewed motion for summary judgment based on the premise that McDaniel no longer had an expert witness; On January 30, 2008, McDaniel filed a motion-to hold summary judgment in abeyance and for additional time to designate an expert. The trial court granted McDaniel’s motion on February 21, 2008, and gave McDaniel an additional sixty days to designate expert witnesses. McDaniel failed to designate an expert witness within sixty days. At that point, McDaniel had been afforded 126 days to designate an expert since the trial court granted Dr. Pidikiti’s motion to strike Dr. Shamblin.
¶ 7. On April 24, 2008, McDaniel filed a motion for additional time to designate experts. McDaniel included the names and curricula vitae of two proposed experts. However, on April 30, 2008, the trial court entered an order granting Dr. Pidikiti’s motion for summary judgment. The trial court granted the motion for summary judgment based on McDaniel’s failure to designate an expert witness despite being afforded sufficient time. Nine *956 years had passed since the underlying facts of this case occurred, and the case had been pending for seven years. The trial court stated that “enough is enough” and held that further delay in the progress of the case would reward McDaniel’s lack of diligence. McDaniel filed a motion to reconsider, and on August 18, 2008, the trial court granted McDaniel’s motion and vacated its order dismissing the cause of action against Magnolia. The trial court denied McDaniel’s motion to reconsider with respect to Dr. Pidikiti. The trial court designated the grant of summary judgment for Dr. Pidikiti as a final order pursuant to Rule 54(b) of the Mississippi Rules of Evidence. Aggrieved, McDaniel appeals.
ANALYSIS
I. TESTIMONY OF PLAINTIFF’S EXPERT, DR. SHAMBLIN
¶ 8. McDaniel claims the trial court erred when it struck Dr. Shamblin’s expert testimony. The trial court granted summary judgment based entirely on the exclusion of McDaniel’s expert witness, Dr. Shamblin. An abuse of discretion standard is required when reviewing a trial court’s decision to allow or disallow evidence, including expert testimony. Miss. Transp. Comm’n v. McLemore, 868 So.2d 31, 34(¶ 4) (Miss.2003).
¶ 9. Mississippi has adopted the federal standard adopted in Daubert v. Merrell Dow Pharmaceuticals., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) as the standard for analyzing the admission of expert testimony. McLemore, 863 So.2d at 39(¶ 23). The trial court has a basic gatekeeping responsibility to “ensure that any and all scientific testimony ... is not only relevant, but reliable.” Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (quoting Daubert, 509 U.S. at 589, 113 S.Ct. 2786). Rule 702 of the Mississippi Rules of Evidence states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Expert testimony should only be admitted if it withstands the two-prong inquiry under Rule 702. McLemore, 863 So.2d at 35(¶ 7) (Miss.2003) (citing M.R.E. 702). “First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education. Second, the witness’s scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue.” Id. (internal citations omitted).
¶ 10. Generally, expert testimony is required to prove the elements of medical negligence. McDonald v. Mem’l Hosp. at Gulfport, 8 So.3d 175, 180(¶ 12) (Miss.2009). “Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Id. (quoting Banner v. Gorman, 605 So.2d 805, 809 (Miss.1992)). There is no requirement that an expert in a medical-malpractice case be a specialist in the same area as the doctor about whom the expert is testifying in regard to the standard of care. Hubbard v. Wansley, 954 So.2d 951, 957(¶ 13) (Miss.2007). However, a medical *957 expert must establish that he is sufficiently familiar with the defendant doctor’s specialty in order to testify about the standard of care owed to the plaintiff/patient. Id.
¶ 11. McDaniel designated Dr. Shamblin as her expert witness to offer testimony regarding the standard of care applicable to Dr. Pidikiti, a cardiologist. In order to testify, Dr. Shamblin must have been familiar with the standard of care to which a cardiologist is held. Dr. Shamblin is trained as a general surgeon, completing a surgical residency in 1963. Dr. Shamblin’s only vascular experience consists of a six-month rotation in vascular surgery during his training from 1959-1963. Dr. Shamblin testified in his deposition that the completion of an internal medicine residency program is a prerequisite to becoming a cardiologist. Dr. Sham-blin did not complete a residency in internal medicine or cardiology; he did not hold himself out to the court as an expert in internal medicine, cardiology, or interven-tional cardiology; he did not have a sub-specialty in vascular surgery; he has never performed a femoral angiogram; he has not performed a femoral artery puncture in fifteen to twenty years; and he has never performed a peripheral vascular surgical procedure, such as was performed on Terrell. For the last twenty years, Dr. Shamblin’s practice has consisted primarily of bariatric surgery.
¶ 12. While it is true that Dr. Shamblin has sufficient knowledge, skill, training, education, and experience to qualify him to testify as an expert in general surgery, McDaniel has offered no evidence that Dr. Shamblin has the requisite experience and knowledge to testify concerning the standard of care required of a cardiologist who is performing a femoral angiogram. The trial court did not abuse its discretion by granting the motion to strike Dr. Shamblin’s testimony. As a general rule, expert testimony must be used to prove the elements of medical negligence. McDonald, 8 So.3d at 180(¶ 12). Since McDaniel had no expert, no triable issues of fact remained with regard to the medical negligence of Dr.' Pidikiti; therefore, wé find that summary judgment was appropriate. This issue is without merit.
II. MCDANIEL’S REQUEST FOR ADDITIONAL TIME TO DESIGNATE AN EXPERT WITNESS
 ¶ 13. McDaniel claims the trial court erred when it denied her motion for additional time to designate an expert witness. When reviewing a trial court’s ruling on discovery matters, we will not disturb the decision of the trial court “unless there has been an abuse of. discretion.” Scoggins v. Baptist Mem’l Hosp.-Desoto, 967 So.2d 646, 648(¶8) (Miss.2007) (quoting Earwood v. Reeves, 798 So.2d, 508, 514(¶ 19) (Miss.2001)). McDaniel claims that the trial court abused its discretion by refusing to allow an additional twenty-one days to designate experts. Rule 56(f) of the Mississippi Rules of Civil Procedure states:
Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
A trial court has sound discretion to grant or deny a continuance under Rule 56(f). Stallworth v. Sanford, 921 So.2d 340, 342-43(¶ 9) (Miss.2006) (citing Owens v. Thomae, 759 So.2d 1117, 1120(¶10) (Miss.1999)).
*958 ¶ 14. The trial court denied McDaniel’s motion for additional time to designate experts based on McDaniel’s failure to designate an expert witness during the sixty-day period awarded when the trial court granted McDaniel’s motion to hold summary judgment in abeyance. Four months had passed since the trial court granted Dr. Pidikiti’s motion to strike Dr. Shamblin as an expert witness. During that four-month period, McDaniel failed to designate additional experts. Two days after the sixty-day extension expired, McDaniel filed the names and curricula vitae of two proposed expert witnesses along with a request for a twenty-one day extension to obtain the opinions of those proposed experts.
¶ 15. These facts show that the trial court did not abuse its discretion by denying McDaniel’s request for twenty-one days to designate experts. Rule 56(f) is not designed to protect litigants who are lazy or dilatory. Stallworth, 921 So.2d at 343(¶ 11) (citing In re Last Will and Testament of Smith v. Smith, 910 So.2d 562, 570(¶ 34) (Miss.2005)). We are hard pressed to overturn the decision of the trial court that provided McDaniel with ample time to designate experts. In its order, the trial court noted:
This case has been pending since 2000-While this court is not an absolute stickler for time limitations, enough is enough. The defendants are entitled to have the benefit of timely and meaningful discovery. Plaintiffs [sic ] are responsible for compliance with ... the orders of the Court. Further delay in the progress of this case is unjust and would reward Plaintiffs’ lack of diligence in pursuing their claim.
We find that the trial court did not abuse its discretion when it denied McDaniel’s request for additional time.
¶ 16. McDaniel also claims that the trial court erred by failing to hold a hearing on the motion for summary judgment. “[T]he Mississippi Supreme Court has held that there is no explicit or implicit right to a hearing under Rule 56(c).” Strange ex rel. Strange v. Itawamba County Sch. Dist., 9 So.3d 1187, 1193(¶ 23) (Miss.Ct.App.2009) (citing Croke v. Southgate Sewer Dist., 857 So.2d 774, 777-78(¶ 10) (Miss.2003)). It is error for a trial court to grant summary judgment without a hearing; however, the error is harmless if there is no unresolved issue of material fact. Adams v. Cinemark USA, Inc., 831 So.2d 1156, 1163 (¶26) (Miss.2002). The supreme court stated that:
Courts generally recognize the advisability of allowing oral argument on summary-judgment motions, but, even the Fifth Circuit Court of Appeals now agrees that the court has the power to order summary judgment without a hearing if it feels that sufficient information is available in the pleadings and the papers in support of and opposition to the motion so that a hearing would be of no utility.
Id. at 1165(¶ 30). As previously stated, expert testimony must be used to prove the elements of medical negligence. McDonald, 8 So.3d at 180(¶ 12). Since McDaniel had no expert testimony, no triable issues of fact remained with regard to the medical negligence of Dr. Pidikiti, and any error that resulted from failing to conduct a hearing on Dr. Pidikiti’s motion for summary judgment is harmless.
CONCLUSION
¶ 17. The trial court did not err in granting summary judgment in favor of Dr. Pidikiti. Furthermore, we find no reversible error regarding the trial court’s refusal to grant McDaniel’s request for a twenty-one day extension to designate experts. Likewise, we find harmless error *959 regarding the lack of a hearing on Dr. Pidikiti’s motion for summary judgment. Therefore, we affirm the circuit court’s decision.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.