**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2016-CA-01141-COA**

OTIS FIPPS                                                                          APPELLANT

v.

GREENWOOD LEFLORE HOSPITAL                                             APPELLEE

DATE OF JUDGMENT:              07/05/2016
TRIAL JUDGE:                   HON. RICHARD A. SMITH
COURT FROM WHICH APPEALED:     LEFLORE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        CARLOS EUGENE MOORE
ATTORNEYS FOR APPELLEE:        TOMMIE GREGORY WILLIAMS JR.
                               TOMMIE G. WILLIAMS
                               HARRIS FREDERICK POWERS III
NATURE OF THE CASE:            CIVIL - MEDICAL MALPRACTICE
DISPOSITION:                   AFFIRMED - 02/06/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.   In this medical-malpractice case, we must determine whether the trial court erred in excluding the testimony of Otis Fipps's medical expert, which resulted in the dismissal of Fipps's suit against Greenwood Leflore Hospital (the Hospital).[1]  Finding no error, we affirm.

**PROCEDURAL HISTORY AND FACTS**

¶2.   On June 12, 2012, Fipps underwent an esophagogastroduodenoscopy (EGD)

_____

[1] In addition to the Hospital, Fipps initially sued Dr. Thomas Calvit in his individual capacity and Greenwood Gastroenterology Center.  Both Dr. Calvit and Greenwood Gastroenterology Center were ultimately dismissed from the lawsuit.

procedure performed by Dr. Thomas Calvit at the Hospital. According to Dr. Calvit, Fipps had complained of epigastric pain in both his left and right lower quadrants, dysphagia (difficulty swallowing), rectal bleeding, and constipation. Fipps also told Dr. Calvit that he possibly ingested a small piece of plastic several days prior to his initial appointment. During the EGD, Dr. Calvit performed an esophageal dilatation[2] to treat Fipps's dysphagia. Fipps claims this procedure caused a perforation of his esophagus, leading to further medical complications including a neck abscess and two additional surgeries.

¶3.	Fipps designated Dr. Myron Stokes, a general surgeon, as an expert "in surgery regarding upper and lower gastrointestinal issues." In his affidavit attached to the designation, Dr. Stokes stated that "the performance of esophageal dilatation [during Fipps's EGD procedure] was not proven to be indicated in any of Dr. Calvit's pre-operative or intraoperative findings, thus constituting a deviation from the standard of care expected of a physician in Dr. Calvit's profession and specialty." Dr. Stokes further opined that the esophageal "dilatation was the initiating event that led to Fipps developing a fistula with resultant neck abscess requiring two additional surgeries." Dr. Stokes was deposed several months later.

¶4.	Based upon Dr. Stokes's deposition, the Hospital filed three pretrial motions. The first asked the trial court to exclude the portions of Dr. Stokes's testimony regarding informed consent. The second asked the trial court to exclude any potential testimony by Dr. Stokes that his medical license was current or that he had never been disciplined by any

---

[2] This procedure is also referred to as an esophageal dilation in the record.

2

medical licensure board.[3]  The third asked the trial court to exclude Dr. Stokes's expert opinion because he lacked the appropriate qualifications to testify.

¶5.    The trial court conducted a hearing on the Hospital's motions, ultimately granting all three.  The effect of these rulings resulted in the exclusion of Dr. Stokes's deposition.[4]  After granting the Hospital's motions, the trial court asked Fipps to call his first witness.  Since Fipps had no witness other than Dr. Stokes, Fipps rested.  The Hospital then requested a dismissal pursuant to Mississippi Rule of Civil Procedure 41(b).  Finding that Fipps could not meet his burden without expert testimony, the trial court granted the Hospital's motion.

**DISCUSSION**

**I.     Expert Testimony**

¶6.    Fipps first argues that Dr. Stokes was qualified to offer his opinion regarding the standard of care applicable to a gastroenterologist.

¶7.    According to Mississippi Rule of Evidence 702,[5] a witness may testify as an expert if the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the

---

[3] After Dr. Stokes's deposition but prior to trial, his Mississippi medical license was suspended.

[4] Fipps had previously informed the trial court that Dr. Stokes's deposition would serve as his trial testimony.

[5] Effective July 1, 2016, the Rules of Evidence were restyled.  Though these changes were not substantive, we have quoted the former language of the rule that was in force during the trial-level proceedings.

3

principles and methods reliably to the facts of the case."

¶8.     The trial court has a gate-keeping responsibility to assure a proposed expert's opinion has "a reliable basis in the knowledge and experience of the relevant discipline." *Worthy v. McNair*, 37 So. 3d 609, 614 n.3 (Miss. 2010) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999)).  *See also Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993).  We review a trial court's determination as to the qualifications of an expert witness under our familiar abuse-of-discretion standard, *Hubbard v. Wansley*, 954 So. 2d 951, 956 (¶11) (Miss. 2007), which has been referred to in medical-expert cases as having "the widest possible discretion." *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 146 (¶16) (Miss. 2007).

¶9.     We first note that the fact that Dr. Stokes, a board-certified general surgeon, is not certified as a gastroenterologist is not dispositive.  "There is no requirement that an expert in a medical-malpractice case be a specialist in the same area as the doctor about whom the expert is testifying in regard to the standard of care." *McDaniel v. Pidikiti*, 39 So. 3d 952, 956 (¶10) (Miss. Ct. App. 2009) (citation omitted).  However, "[s]atisfactory familiarity with the specialty of the defendant doctor is . . . required in order for an expert to testify as to the standard of care owed to the plaintiff patient." *Hubbard*, 954 So. 2d at 957 (¶13).

¶10.    In concluding that Dr. Stokes was not qualified, the trial court determined that "the questions pertaining to Dr. Stokes's knowledge of and familiarity with the standards of care of a gastroenterologist treating a patient such as Fipps simply were not asked."  And that nothing exists "in Dr. Stokes's deposition from which this court can determine that Dr.

Stokes is familiar with and/or possesses knowledge of the standard of care in the speciality of gastroenterology." The trial court recognized that Dr. Stokes did have some familiarity with EGD procedures, but noted that Dr. Stokes "was never asked and did not testify that he was familiar with the standard of care in the medical speciality of gastroenterology as to when and whether the dilatation procedures should be performed." In fact, Dr. Stokes's testimony concerning the esophageal dilatation indicated that he had never used the specific tool (a Maloney dilator) used by Dr. Calvit during the EGD. The trial court further noted that Dr. Stokes was never tendered as an expert in gastroenterology, only as a general surgeon.

¶11. Mindful that trial courts have the widest possible discretion in medical-expert cases, we cannot find that the trial court abused its discretion in finding Dr. Stokes was not qualified to offer his expert opinion. Although Dr. Stokes had some familiarity with the procedure, he did not indicate sufficient familiarity with the standard of care to which a gastroenterologist is held—Dr. Stokes simply opined as to what he would have done as a general surgeon in a similar situation. To reiterate the trial court's finding, Dr. Stokes "was never asked and did not testify that he was familiar with the standard of care in the medical speciality of gastroenterology as to when and whether the dilatation procedures should be performed." "The rule is that the expert must exercise the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Poole ex rel. Poole v. Avara*, 908 So. 2d 716, 724 (¶16) (Miss. 2005). Absent expert testimony, there is no triable issue of fact regarding the alleged medical malpractice of Dr. Calvit. This issue is without merit.

## II.    Informed Consent

5

¶12. Fipps next argues that Dr. Stokes's opinion regarding informed consent was properly disclosed; thus, the trial court erred in granting the Hospital's motion in limine. Upon questioning by the Hospital during his deposition, Dr. Stokes stated that he had not been asked to give his opinion on informed consent. However, on cross-examination, Fipps questioned Dr. Stokes about informed consent. The Hospital objected. After learning that Dr. Stokes's deposition would be his trial testimony, the Hospital then filed its motion in limine. "The standard of review for a trial court's decision either to admit or exclude evidence is abuse of discretion." *Burnwatt v. Ear, Nose & Throat Consultants of N. Miss.*, 47 So. 3d 109, 114 (¶17) (Miss. 2010). Since we are affirming the trial court's decision to exclude Dr. Stokes's testimony, we see no reason to address this issue.

### III. Status of Dr. Stokes's Medical License

¶13. Fipps contends that the trial court erred in granting the Hospital's motion in limine to prevent Dr. Stokes from testifying that he was a licensed physician. In his deposition, Dr. Stokes testified that he had never been disciplined by any state's medical-licensure board. By the time of trial, however, his license to practice medicine in Mississippi had been suspended. Fipps argues that any actions by the Mississippi State Board of Medical Licensure regarding Dr. Stokes's license did not commence until after Dr. Stokes's deposition; thus, Dr. Stokes's deposition testimony that he was a licensed physician who had never been disciplined was accurate at the time. Ultimately, Dr. Stokes's deposition was offered as his testimony. For reasons previously stated, we see no reason to address this issue.

¶14.   **AFFIRMED.**

     **GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**