# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CT-00969-SCT

*WHITNEY LOREN LEE, INDIVIDUALLY AND
ON BEHALF OF ALL STATUTORY WRONGFUL
DEATH BENEFICIARIES OF LISA LEE,
DECEASED*

*v.*

*JEFFERY DOOLITTLE, M.D., AND GREENVILLE
SURGICAL CLINIC, P.A.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/2023 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| TRIAL COURT ATTORNEYS: | ELLIS TURNAGE |
| | P. SCOTT PHILLIPS |
| | TOMMIE GREGORY WILLIAMS, JR. |
| | L. CARL HAGWOOD |
| | CLAIRE K. ROBINETT |
| | R. E. PARKER, JR. |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID D. O'DONNELL |
| | ELLIS TURNAGE |
| ATTORNEYS FOR APPELLEES: | L. CARL HAGWOOD |
| | DAVID MARK EATON |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REINSTATED AND AFFIRMED - 04/16/2026 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2022-CT-00186-SCT

**EN BANC.**

**BRANNING, JUSTICE, FOR THE COURT:**

¶1. The two consolidated cases before this Court on writ of certiorari stem from a medical-malpractice wrongful-death action filed by Whitney Loren Lee, individually and on behalf of the wrongful-death beneficiaries of her mother, Lisa Lee, against several defendants, including Jeffrey Doolittle, M.D. On appeal, Whitney challenges the Washington County Circuit Court's decision to strike Whitney's proposed medical expert, resulting in a grant of summary judgment in favor of Dr. Doolittle. The Court of Appeals reversed and remanded, holding that the trial court abused its discretion when it struck Whitney's proposed expert. *Lee v. Doolittle*, No. 2022-CA-00186-COA, 2025 WL 1110881, at *6 (Miss. Ct. App. Apr. 15, 2025). Upon review, however, we find that the trial court was within its discretion to exclude the proposed expert testimony; therefore, we reverse the judgment of the Court of Appeals, and we reinstate and affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 12, 2018, Lisa Lee presented at the Delta Regional Medical Center (DRMC) with weakness, nausea, and vomiting. Emergency-room physician Dr. Hilton O'Neal acknowledged her complex medical history of autoimmune hepatitis resulting in cirrhosis of the liver as well as other conditions and diagnosed her with liver pain and cryptogenic cirrhosis. Upon her admission to DRMC for further care, internal-medicine physician Dr. Parvez Karim noted that she was a "possible sepsis risk" with signs of

2

jaundice and elevated liver functions. The following day, Dr. Ronald Pritchard ordered an abdominal ultrasound, from which infectious-disease physician Dr. Satwiner Singh identified the presence of gallstones and "an impression . . . [of] cholelithiasis with evidence of cholecystitis."

¶3. On February 14, 2018, Dr. Singh consulted general surgeon Dr. Jeffrey Doolittle "regarding gallbladder with gallstones possible cholecystiti." In his evaluation, Dr. Doolittle noted Lisa's previous diagnoses of autoimmune hepatitis, cirrhosis of the liver, and end-stage liver disease; he also reviewed Lisa's recent ultrasound results and medical history, and he conducted a physical examination. Dr. Doolittle concluded that, due to Lisa's end-stage liver disease, she was not a candidate for surgery. Dr. Doolittle conveyed his findings to the attending physician, Dr. Parez Karim.

¶4. Over the next five days, Lisa was treated with several different medications and began showing signs of slow improvement. On February 19, 2018, she was discharged from Delta Regional Medical Center. Two days later, however, Lisa presented at Bolivar Medical Center (BMC) with signs of weakness and confusion and was then diagnosed with sepsis. She was transferred to Merit Health Center (MHC) in Jackson, Mississippi, where she died the following day from "cardiopulmonary arrest due to or as a consequence of urosepsis."

¶5. Following Lisa's death, her daughter Whitney filed a medical-malpractice suit on behalf of Lisa's wrongful-death beneficiaries. Whitney's complaint asserted that Lisa's healthcare providers, including Dr. Doolittle, were negligent in treating her sepsis. In her

3

discovery responses, Whitney stated that she sought to designate Dr. Scott A. Resnick, a board-certified interventional radiologist, as her medical expert witness. As the Court of Appeals noted:

> The Johns Hopkins Medicine website defines interventional radiology as "a medical sub-specialty of radiology utilizing minimally-invasive image-guided procedures to diagnose and treat diseases in nearly every organ system." "The concept behind interventional radiology is to diagnose and treat patients using the least invasive techniques currently available in order to minimize risk to the patient and improve health outcomes."

*Lee*, 2025 WL 1110881, at *2 n.3 (citations omitted).

¶6.     According to Dr. Resnick's curriculum vitae, he was licensed to practice medicine in Illinois, being board certified in interventional radiology, and he had worked as a professor with the Division of Vascular Surgery and the Division of Vascular and Interventional Radiology at Northwestern Memorial Hospital since 2004. Having served as a full-time professor since 2018, he also authored numerous published articles about percutaneous procedures, vascular and cardiovascular surgery, and interventional radiology. Additionally, although Dr. Resnick conducted numerous medical presentations related to interventional radiology, vascular and cardiovascular complications and surgeries, he had never practiced internal medicine, gastroenterology, general surgery, or vascular surgery.

¶7.     Dr. Resnick stated in his expert affidavit that he was "familiar with the national standard of care for a physician that provides medical care for an adult patient who has been admitted to a community hospital by an internal medicine physician with clinical signs and symptoms of cholecystitis similar to Lisa[s]." His affidavit further provided that he had

4

"been advised of the legal standard in Mississippi concerning the concept of a reasonable prudent minimally competent *emergency room* physician practicing in the United States of America with similar facilities, options, services and equipment as existed during [Lisa's] admission to Delta Regional Medical Center (DRMC) on February 12-19, 2018."

¶8.    His proffered expert opinions included the following:

> It is my firm opinion [that] Dr. Doolittle did not act within the standard of care in his assessment and subsequent plan for [Lisa] on February 14, 2018. Dr. Doolittle's clinical conclusions directly contradicted the objective imaging findings of cholecystitis.    Dr. Doolittle's clinical conclusion directly contradicted those reached by the consulted infectious disease physician Dr. Satwiner Singh.  Dr. Doolittle did not order or recommend further diagnostic testing (such as HIDA scan or CT scan) to resolve the discrepancy between his clinical conclusion that [Lisa] did not have cholecystitis and the conclusion reached by Dr. Singh and the diagnostic ultrasound that [Lisa] did have cholecystitis.  *Upon reasonably concluding [Lisa] not to be a surgical candidate, Dr. Doolittle failed to recommend nonsurgical options for gallbladder decompression such as percutaneous cholecystosyomy tube placement.*

>     . . . .

> In my opinion, based upon a reasonable degree of medical certainty, Dr, Doolittle failed to initiate treatment that would have mostly probably prevented [Lisa's] unfortunate death, namely antibiotic therapy and appropriate resuscitative measures; however, an opportunity to resolve the conflicting clinical conclusions and make the correct diagnosis was missed and Dr. Doolittle deviated and departed from the nationwide standard of care, for this adult. Dr. Doolittle failed to meet the standard of care and his lack of treatment contributed to, caused and/or led to [Lisa's] death. In my opinion based upon a reasonable degree of medical probability, this was a preventable death, directly attributed to Dr. Doolittle's failure to resolve the discrepancy between his clinical conclusion that [Lisa] did not have cholecystitis and that reached by Dr. Singh and the diagnostic ultrasound that [Lisa] did have cholecystitis and the subsequent failure to place a drainage tube to decompress and drain her gallbladder failed to meet the nationwide standard of care for diagnosis and

5

treatment of sepsis. All of the opinions expressed herein are based on a reasonable degree of medical probability.

In conclusion, in my opinion, based upon a reasonable degree of medical probability and based on the facts reviewed by me in [Lisa's] DRMC medical charts, the medical care provided by Dr. Doolittle, at DRMC on February 14, 2018 failed to meet the nationwide standard of care for an adult patient with the clinical signs and symptoms of sepsis.

(Emphasis added.) Dr. Resnick also noted that "percutaneous cholecystostomy tube (gallbladder drain) is a simple and routinely performed non-surgical procedure" by both interventional radiologists and general surgeons.

¶9. Dr. Doolittle subsequently filed a motion to strike Dr. Resnick's designation as an expert, followed by a motion for summary judgment. The circuit court granted Dr. Doolittle's motion to strike and motion for summary judgment, finding that "Dr. Resnick's curriculum vitae contains no education, training or experience which would qualify him to render opinions related to the standard of care for [a] general surgeon determining a candidate for surgery, such as the review performed by Dr. Doolittle on the Plaintiff." In its very thorough opinion, the circuit court ultimately concluded that Dr. Resnick "failed to demonstrate that he is sufficiently familiar with the applicable standard of care for the performance of general surgery at issue, that is, whether [Lisa] was a candidate for surgery."

¶10. Whitney's appeal was assigned to the Court of Appeals, which found that the circuit court abused its discretion by striking Dr. Resnick's designation as an expert medical witness. *Lee*, 2025 WL 1110881, at *6. Dr. Doolittle then filed his petition for writ of certiorari, which this Court granted.

6

## STANDARD OF REVIEW

¶11. This Court reviews a trial court's decision to exclude expert testimony using an abuse-of-discretion standard. *Hyde v. Martin*, 264 So. 3d 730, 734 (Miss. 2019) (citing *Mem'l Hosp. at Gulfport v. White*, 170 So. 3d 506, 508 (Miss. 2015)). "Abuse of discretion is found when the reviewing court has a 'definite and firm conviction' that the court below committed a clear error of judgment and the conclusion it reached upon a weighing of the relevant factors." *Wayne Cnty. Sch. Dist. v. Quitman Sch. Dist.*, 346 So. 3d 853, 857 (Miss. 2022) (internal quotation marks omitted) (quoting *McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 405 (Miss. 2007)). "But we review the court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the summary-judgment motion has been made." *Hyde*, 264 So. 3d at 734 (citing *Miss. Baptist Med. Ctr., Inc. v. Phelps*, 254 So. 3d 843, 844-45 (Miss. 2018)).

## DISCUSSION

¶12. A plaintiff must establish a prima facie case of medical malpractice by proving the following:

> (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

*Vicksburg Healthcare, LLC v. Dees*, 152 So. 3d 1171, 1174 (Miss. 2014) (quoting *Crosthwait v. S. Health Corp. of Houston, Inc.*, 94 So. 3d 1070, 1073 (Miss. 2012)). This Court has found that "expert medical testimony is generally a vital means to [the]

7

establishment of the plaintiff's *prima facie* case." ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.*,** 564 So. 2d 1346, 1357 (Miss. 1990). Without such expert testimony, the plaintiff's case will not survive summary judgment. ***Dees***, 152 So. 3d at 1174 (citing ***Kuiper v. Tarnabine***, 20 So. 3d 658, 661 (Miss. 2009)).

¶13.     Further, the trial court has the discretion to determine whether a witness is sufficiently knowledgeable to be considered an expert. ***Nunnally v. R.J. Reynolds Tobacco Co.*,** 869 So. 2d 373, 384 (Miss. 2004).    "Expert testimony should only be admitted if it withstands the two-prong inquiry" set forth under Mississippi Rule of Evidence 702.  ***McDonald v. Mem'l Hosp. at Gulfport***, 8 So. 3d 175, 181 (Miss. 2009).  "First, the witness must be qualified by virtue of his or her knowledge, skill, experience or education." ***Id.*** (internal quotation mark omitted) (quoting ***Miss. Transp. Comm'n v. McLemore***, 863 So. 2d 31, 35 (Miss. 2003)). "Second, the witness's scientific, technical or other specialized knowledge must assist the trier of fact in understanding or deciding a fact in issue." ***Id.*** (internal quotation mark omitted) (quoting ***McLemore***, 863 So. 2d at 35).   While the proffered expert does not necessarily need to practice the same speciality as the defendant doctor, the expert must be sufficiently familiar with the defendant doctor's speciality to testify about the standard of care.  ***Hubbard v. Wansley***, 954 So. 2d 951, 957 (Miss. 2007). "It is the scope of the witness'[s] knowledge and not the artificial classification by title that should govern the threshold question of admissibility." ***Id.*** (internal quotation marks omitted) (quoting ***West v. Sanders Clinic for Women, P.A.*,** 661 So. 2d 714, 719 (Miss. 1995)).

8

¶14. For example, in *Hubbard*, this Court upheld the trial court's exclusion of a board-certified neurosurgeon's expert opinion regarding the standard of care for an internal-medicine physician treating subarachnoid hemorrhage. *Id.* The Court held that because the witness "did not consider himself to be an expert in the field of internal medicine" and "had never practiced primary care medicine[,]" he could not testify as to the standard of care for an internal-medicine practitioner in that particular case. *Id.* at 957. Likewise, in *Fipps v. Greenwood Leflore Hospital*, 237 So. 3d 194, 197 (Miss. Ct. App. 2018), the Court of Appeals upheld a trial court's exclusion of a board-certified general surgeon's testimony regarding the standard of care for a gastroenterologist. The Court acknowledged that "[t]here is no requirement that an expert in a medical-malpractice case be a specialist in the same area as the doctor about whom the expert is testifying[.]" *Id.* (internal quotation mark omitted) (quoting *McDaniel v. Pidikiti*, 39 So. 3d 952, 956 (Miss. Ct. App. 2009)). But the Court found that because the expert had never performed the procedure in question nor was "tendered as an expert in gastroenterology," he did not possess the required familiarity to testify as to the standard of care in that case. *Id.*

¶15. In the present case, the only evidence before the Court regarding Dr. Resnick's qualifications is contained in his affidavit. We find no evidence that Dr. Resnick held himself out to be an expert in the field of general surgery nor did he have experience evaluating patients with end-stage liver disease to determine whether they were candidates for surgery. Additionally, we find no evidence suggesting that Dr. Resnick ever performed

the "non-surgical options for gallbladder decompression such as percutaneous cholecystostomy tube placement" referred to in his affidavit. His affidavit does not make reference to his familiarity with the standard of care for a general surgeon nor does it reference any training or experience as a general surgeon.

¶16.   The Court of Appeals pointed out that Dr. Resnick's proffered opinion did not address whether Lisa was a candidate for surgery (as Dr. Resnick agreed with Dr. Doolittle that she was not a surgical candidate) but rather whether Dr. Doolittle breached the standard of care in his alleged misdiagnosis of Lisa's condition and his failure to offer certain nonsurgical options. We find the distinction to be irrelevant because Dr. Resnick lacked sufficient familiarity with the speciality of general surgery to render expert testimony.

¶17.   This Court has "consistently stated that when considering Miss. R. Evid. 702 issues, our trial judges are placed in the role of gatekeepers, 'ensuring that the expert testimony is both relevant and reliable.'" *Troupe v. McAuley*, 955 So. 2d 848, 857 (Miss. 2007) (citing *Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara*, 908 So. 2d 716, 723 (Miss. 2005)). We also have emphasized the evidentiary rule that an "expert must exercise the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Poole*, 908 So. 2d at 724 (citing *McLemore*, 863 So. 2d at 39). We now reiterate the wide discretion this Court gives to trial courts under Rule 702. With that in mind, this Court finds that the trial court was within its discretion to exclude Dr. Resnick's expert testimony as unqualified under Rule 702 and, likewise, to grant summary judgment in favor of Dr.

Doolittle.

## CONCLUSION

¶18.    Because we find that the trial court did not abuse its discretion by excluding Dr. Resnick's expert testimony under Rule 702 and granting summary judgment in favor of Dr. Doolittle, we reverse the judgment of the Court of Appeals and reinstate and affirm the judgment of the trial court.

¶19.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, P.J., ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., DISSENT WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN J.**

**KING, PRESIDING JUSTICE, DISSENTING:**

¶20.    I respectfully dissent from the majority's decision to reverse the judgment of the Court of Appeals and to reinstate and affirm the judgment of the trial court. Because Dr. Scott Resnick was sufficiently qualified to testify as to the standard of care that should be followed by a general surgeon when evaluating a patient with Lisa Lee's conditions, I would find that the Court of Appeals correctly held that the trial court abused its discretion by striking Dr. Resnick as an expert witness.

¶21.    Lisa was admitted into Delta Regional Medical Center on February 12, 2018, complaining of weakness, all-over pain, nausea, and vomiting. Lisa had a past medical history of diabetes, fibromyalgia, hepatitis, hypertension, liver disease, migraine, morbid

11

obesity, and valvular heart disease. Dr. Ellis O'Neal, an emergency-room physician, noted that Lisa was jaundiced. His clinical impression was liver pain and cryptogenic cirrhosis. On February 13, 2018, Dr. Ronald Pritchard, board certified in radiology, signed an ultrasound report stating that his impression was "[c]holelithiasis with evidence of cholecystitis."

¶22.   On February 14, 2018, Dr. Jeffrey Doolittle, a board-certified general surgeon, was consulted for "cirrhosis of liver." The consult narrative stated "50-year-old female was asked to see regarding gallbladder with gallstones possible cholecystitis. She has autoimmune hepatitis now with cirrhosis with greatly elevated [liver function tests]." The following was Dr. Doolittle's assessment of Lisa:

> **Code(s):** K80.20 - Calculus of gallbladder without cholecystitis without obstruction   **Status:** Acute 50-year-old female with end-stage liver disease. Unfortunately she is not a surgical candidate. She understands her terminal disease. No surgical options available. Will sign off.

Dr. Satwinder Singh, an infectious-disease specialist, subsequently evaluated Lisa and determined that she was suffering from cholecystitis with cholelithiasis. Lisa was treated with steroids and antibiotics and was discharged on February 19, 2018.

¶23.   On February 21, 2018, Lisa arrived via ambulance at Bolivar Medical Center and was diagnosed with sepsis. On February 22, 2018, Lisa died. Lisa's death certificate lists her cause of death as cardiopulmonary arrest due to end-stage liver disease and urosepsis.

¶24.   Lisa's daughter Whitney Lee filed suit against Dr. Doolittle, among others, alleging claims of medical malpractice and wrongful death. Whitney alleged that Dr. Doolittle had failed to properly monitor, diagnose, and treat Lisa's sepsis and that Lisa was prematurely

12

discharged. Whitney designated as an expert Dr. Resnick, a board-certified interventional radiologist. Dr. Resnick opined that Dr. Doolittle had "failed to meet the nationwide standard of care for an adult patient with the clinical signs and symptoms of sepsis." Moreover, Dr. Resnick concluded that "[t]he delay in diagnosis and definitive care by Dr. Jeffrey Doolittle's deviations and departures from the applicable nationwide standards of care for this adult patient led to Lee's February 22, 2018 untimely and unfortunate death."

¶25.    Dr. Doolittle  submitted a motion to strike Dr. Resnick as an expert, arguing that Dr. Resnick was unqualified to render opinions related to the standard of care of a physician practicing general surgery. The trial court granted Dr. Doolittle's motion to strike, finding that Dr. Resnick was not qualified to "render opinions related to the standard of care applicable to a general surgeon determining whether or not decedent Lisa Lee was a surgical candidate . . . ." The Court of Appeals reversed the trial court's grant of the motion to strike and its subsequent grant of Dr. Doolittle's motion for summary judgment for lack of medical expert testimony. ***Lee v. Doolittle***,  No. 2022-CA-00186-COA, 2025 WL 1110881, at *1 (Miss. Ct. App. Apr. 15, 2025). It found that "Dr. Resnick's averments, combined with his knowledge, training, and education, provided him with sufficient familiarity to testify to the standard of care that should be followed by a general surgeon when diagnosing a patient with the decedent's condition." *Id.* at *6.

¶26.    I agree with the assessment of the Court of Appeals that Dr. Resnick's resume and affidavit showed that he was sufficiently qualified to testify regarding the standard of care

13

for a general surgeon evaluating a patient with Lisa's conditions. Mississippi Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

MRE 702.

¶27. "Mississippi physicians are bound by nationally-recognized standards of care; they have a duty to employ 'reasonable and ordinary care' in the treatment of their patients." *Glenn v. Peoples*, 185 So. 3d 981, 985 (Miss. 2015) (internal quotation marks omitted) (quoting *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990)). "[O]ur law requires a plaintiff to establish—through a qualified expert—what is required of a *minimally competent* [physician], 'whose skills and knowledge are sufficient to meet the licensure or certification requirements for the profession or specialty practiced.'" *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Braswell v. Stinnett*, 99 So. 3d 175, 179 (Miss. 2012)).

¶28. "[T]he rule is that the expert must exercise the same level of intellectual rigor that

14

characterizes the practice of an expert in the relevant field." ***Troupe v. McAuley***, 955 So. 2d 848, 858 (Miss. 2007) (internal quotation marks omitted) (quoting ***Poole ex rel. Wrongful Death Beneficiaries of Poole v. Avara***, 908 So. 2d 716, 724 (Miss. 2005)). "[A] specialist in a particular branch within a profession will not be required.'" ***Brown v. Mladineo***, 504 So. 2d 1201, 1202 (Miss. 1987) (quoting C. McCormick, *Evidence* § 13 (3d ed. 1984)). "Most courts allow a doctor to testify if they are satisfied of his familiarity with the standards of a specialty, though he may not practice the specialty himself." ***Id.***

¶29.    Dr. Resnick is a board-certified interventional radiologist who received his medical degree from Northwestern University Feinberg School of Medicine in 1992. Dr. Resnick had been on staff at Northwestern Memorial Hospital, among others, since 2000. He had been teaching vascular and interventional radiology at Northwestern Memorial Hospital since 2000 and had been teaching vascular surgery since 2004. Dr. Resnick also had served for four years at Northwestern Memorial Hospital both on the Surgical Services Executive Committee and the Bluhm Cardiovascular Institute Planning and Operations Committee. Dr. Resnick additionally had served as an Annals of Vascular Surgery reviewer and was a prior member of the Society of Vascular Surgery.

¶30.    Moreover, Dr. Resnick had authored and coauthored numerous publications regarding interventional radiology and  vascular and cardiovascular surgery. He had been a primary investigator in trials involving primary liver cancer and in vascular and interventional radiology research. He further gave a presentation on minimally invasive liver-directed

therapies.

¶31.    Dr. Resnick submitted an affidavit stating that he was

> familiar with the national standard of care for a physician that provides
> medical care for an adult patient who has been admitted to a community
> hospital by an internal medicine physician with clinical signs and symptoms
> of cholecystitis similar to Lisa Lee's. I have been advised of the legal standard
> in Mississippi concerning the concept of a reasonable prudent minimally
> competent emergency room physician[1] practicing in the United States of
> America with similar facilities, options, services and equipment as existed
> during Lisa Lee's admission to Delta Regional Medical Center (DRMC) on
> February 12-19, 2018.

Dr. Resnick further stated that he was "generally familiar with the facilities, resources, services, equipment and options that were available to Dr. Jeffrey Doolittle, a board certified general surgeon who undertook and performed a consultation of Lisa Lee at the request of Dr. Parez Karim on February 14, 2018 at DRMC."

¶32.    Dr. Resnick emphasized that Dr. Doolittle's assessment that Lisa "did not have cholecystitis contradicted the sonographic demonstration of findings consistent with cholecystitis." Dr. Resnick stated that Lisa's antibiotic treatment "temporized but did not definitively treat her cholecystitis." According to Dr. Resnick, Lisa should have undergone gallbladder decompression during her initial hospitalization. He stated that the cause of the

---

[1]During the hearing on the motion to strike and motion for summary judgment, counsel for Lee testified that the affidavit's statement that Dr. Resnick had been advised of the legal standard for a reasonably prudent *emergency room physician* was in error and submitted a motion to amend Dr. Resnick's affidavit to stated that he had been "advised of the legal standard in Mississippi concerning the concept of a reasonable prudent minimally competent *general surgeon* practicing in the United States of America . . . ." The trial court submitted its order without addressing the motion, however.

sepsis that led to Lisa's death was untreated gallbladder outflow obstruction and cholecystitis. Dr. Resnick stated that, in his opinion, Dr. Doolittle did not act within the standard of care in his assessment of and subsequent plan for Lisa and that his clinical conclusions directly contradicted the objective imaging findings of cholecystitis as well as those reached by Dr. Singh.

¶33.    Dr. Resnick wrote that Dr. Doolittle failed to order or recommend further testing to resolve the discrepancy between his conclusion that Lisa did not have cholecystitis and the conclusion reached by Dr. Singh and the diagnostic ultrasound. Therefore, Dr. Resnick stated that "[u]pon reasonably concluding [Lisa] not to be a surgical candidate, Dr. Doolittle failed to recommend nonsurgical options for gallbladder decompression such as percutaneous cholecystostomy tube placement." He further wrote:

> Percutanous cholecystostomy tube (gallbladder drain) placement is a simple and routinely performed procedure. Percutaneous cholecystostomy tube placement is regularly performed in even the most critically ill patients, with low risk for bleeding or other complications.

> In my opinion based upon a reasonable degree of medical certainty, if [Lisa] had undergone percutaneous gallbladder drain placement at any time during her DRMC stay from February 12, 2018 to February 19, 2018 she would not have subsequently re-presented with and succumbed to biliary sepsis a few days later.

> . . . .

> In my opinion based upon a reasonable degree of medical probability, this was a preventable death, directly attributed to Dr. Doolittle's failure to resolve the discrepancy between his clinical conclusion that [Lisa] did not have cholecystitis and that reached by Dr. Singh and the diagnostic ultrasound that [Lisa] did have cholecystitis and the subsequent failure to place a drainage

17

tube to decompress and drain her gallbladder failed to meet the nationwide standard of care for diagnosis and treatment of sepsis.

¶34. This Court has recognized that "the liberal goals of [the rules of evidence] include reducing the traditional barriers to opinion testimony." *Worthy v. McNair*, 37 So. 3d 609, 614 (Miss. 2010) (internal quotation marks omitted) (quoting *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 36 (Miss. 2003)). Further, "'the trial court's role as gatekeeper is not intended as a replacement for the adversary system' when the expert's testimony is both relevant and reliable. 'Vigorous cross-examination, presentations of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky *but admissible* evidence.'" *Id.* at 615 (citation omitted) (quoting *McLemore*, 863 So. 2d at 39, 36).

¶35. I would find that Dr. Resnick was sufficiently qualified to offer expert-opinion testimony regarding the standard of care owed by a general surgeon to a patient with Lisa's conditions. Although the trial court found that Dr. Resnick was not qualified to "render opinions related to the standard of care applicable to a general surgeon determining whether or not decedent Lisa Lee was a surgical candidate," as the Court of Appeals stated, "Resnick's proffered opinions did not address whether Lisa was a candidate for surgery. Instead, his opinions address Dr. Doolittle's misdiagnosis of cholecystitis and failure to recommend a routine, non-surgical percutaneous procedure to drain the gallbladder." *Lee*, 2025 WL 1110881, at *4 (footnote omitted).

¶36. Dr. Resnick stated that he was "familiar with the national standard of care for a

18

physician that provides medical care for an adult patient who has been admitted to a community hospital by an internal medicine physician with clinical signs and symptoms of cholecystitis similar to Lisa Lee's." He further stated that he was "generally familiar with the facilities, resources, services, equipment and options that were available to Dr. Jeffrey Doolittle, a board certified general surgeon who undertook and performed a consultation of Lisa Lee at the request of Dr. Parez Karim on February 14, 2018 at DRMC." Lastly, Dr. Resnick's extensive resume demonstrated that he was familiar with percutaneous procedures. He stated that percutanous cholecystostomy tube placement was a simple and routinely performed procedure.

¶37.    Dr. Resnick's resume and affidavit qualified him to render opinions related to the standard of care for a general surgeon evaluating a patient with Lisa's conditions. Therefore, I dissent and would affirm the decision of the Court of Appeals to reverse the judgment of the trial court and remand this case for further proceedings.

**SULLIVAN, J., JOINS THIS OPINION.**